Citation Nr: 1443652 
Decision Date: 09/30/14 Archive Date: 10/06/14

DOCKET NO. 10-22 402A ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Providence, Rhode Island


THE ISSUES

1. Entitlement to service connection for a heart condition, including as secondary to service-connected deviated septum.

2. Entitlement to a total disability rating due to individual unemployability (TDIU).


REPRESENTATION

Appellant represented by: Disabled American Veterans


WITNESS AT HEARING ON APPEAL

The Veteran

ATTORNEY FOR THE BOARD

A.E.H. Gibson, Associate Counsel
INTRODUCTION

The Veteran served on active duty from June 1975 to July 1979.

This appeal to the Board of Veterans' Appeals (Board) is from a June 2008 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Providence, Rhode Island.

In February 2010, the Veteran had a personal hearing before the undersigned Veterans Law Judge (VLJ). Thereafter, the Board remanded these claims in February and December 2013 for additional development. The purposes of the remand have been met, and the claims may now be adjudicated on their merits.

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). 38 U.S.C.A. § 7107(a)(2) (West 2002).


FINDINGS OF FACT

1. The preponderance of the evidence is against a finding that the Veteran's heart condition is related to service or that it was caused or aggravated by his service-connected deviated septum.

2. The Veteran's service-connected disabilities do not render him unemployable, and a referral to the Director of the Compensation and Pension Service for consideration of an extraschedular TDIU is not warranted. 38 U.S.C.A. § 1155 (West 2002); 38 C.F.R. §§ 3.321(b)(1), 3.340, 3.341, 4.15, 4.16, 4.18, 4.19 (2013).
 

CONCLUSIONS OF LAW

1. The criteria for entitlement to service connection for a heart condition have not been met. 38 U.S.C.A. §§ 1110, 5107 (West 2002); 38 C.F.R. §§ 3.102, 3.303, 3.304, 3.307, 3.309, 3.310 (2013).

2. The criteria for referral to the Director of the Compensation and Pension Service of an extraschedular claim of entitlement to a TDIU have not been met. 38 U.S.C.A. §§ 1155 , 5100, 5102, 5103, 5103A, 5107 (West 2002 & Supp. 2013); 38 C.F.R. §§ 3.102 , 3.159, 3.321, 3.326, 4.1, 4.2, 4.3, 4.7, 4.10 (2013).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Veterans Claims Assistance Act of 2000 (VCAA)

Under the VCAA, when VA receives a complete or substantially complete application for benefits, it must notify the claimant of the information and evidence not of record that is necessary to substantiate the claim, which information and evidence VA will obtain, and which information and evidence the claimant is expected to provide. 38 C.F.R. § 3.159 (2013). Here, the Veteran was provided with the relevant notice and information needed to substantiate his heart condition claim in an April 2008 letter. He was provided notice regarding his TDIU claim in March 2013, after which his claim was readjudicated in September 2013. He has not alleged any notice deficiency during the adjudication of his claim. Shinseki v. Sanders, 129 S. Ct. 1696 (2009).

VA also has a duty to assist the Veteran in obtaining potentially relevant records, and providing an examination or medical opinion when necessary to make a decision on the claim. Here, the Veteran's service treatment and post-service treatment records have been obtained and associated with the claims file. By letter dated March 8, 2013, he was asked to submit, or authorize VA to obtain, records from his private otolaryngologist, but he did not respond. He was also asked to complete an application for a TDIU (VA Form 21-8940), which he did not do. These records and application could have proven important in resolving his claims. The duty to assist is a two-way street. If the Veteran wishes help in developing his claim, he cannot passively wait for it in those circumstances where he may or should have information that is essential in obtaining the relevant evidence. Wood v. Derwinski, 1 Vet. App. 190, 193 (1991). 

The Veteran was provided with a VA examination in May 2013, and supplemental opinions were obtained in October 2013, April 2014, and June 2014. These opinions, in aggregate, are adequate for adjudication, as the examiner provided well-reasoned opinions. VA's duty to assist with respect to obtaining relevant records and an examination has been met. 38 C.F.R. § 3.159(c); Barr v. Nicholson, 21 Vet. App. 303, 312 (2007).

The AOJ complied with the Board's February and December 2013 remand directives, which consisted of providing notice to the Veteran of the information and evidence needed to substantiate his TDIU claim, obtaining VA treatment records, seeking to obtain private treatment records, and obtaining the VA examination opinions discussed above. Stegall v. West, 11 Vet. App. 268 (1998). The Board concludes that no further notice or assistance to the Veteran is required to fulfill VA's duty to assist her in the development of the claim. Smith v. Gober, 14 Vet. App. 227 (2000), aff'd 281 F.3d 1384 (Fed. Cir. 2002); Dela Cruz v. Principi, 15 Vet. App. 143 (2001).

In regard to the Veteran's May 2012 hearing, the undersigned Veterans Law Judge (VLJ) complied with 38 C.F.R. § 3.103(c)(2). Bryant v. Shinseki, 23 Vet. App 488 (2010). At the beginning of the hearing, the VLJ explained the issues under consideration. The Veteran presented testimony as to why he thinks that his deviated septum caused his heart condition, as well as to why his disabilities have caused him to be unemployable, thus showing actual knowledge of the evidence needed to substantiate the claim. Further, the VLJ asked the Veteran about his treatment providers, and offered to keep the record open to allow time for additional records to be received. He declined to keep the record open, but, additional records were requested on remand, and he was provided with VA examinations to further develop the evidence. As above, the Veteran has not alleged any prejudicial deficiency in the hearing. Shinseki v. Sanders, 129 S. Ct. 1696 (2009). 




Service Connection

Service connection may be granted for any current disability that is the result of a disease contracted or an injury sustained while on active duty service. 38 U.S.C.A. § 1110, 1131 (West 2002); 38 C.F.R. §§ 3.303(a), 3.304 (2013). Service connection may also be granted for a disease diagnosed after discharge, where all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d) (2013).

Service connection requires competent evidence showing: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and, (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004), citing Hansen v. Principi, 16 Vet. App. 110, 111 (2002); see also Caluza v. Brown, 7 Vet. App. 498 (1995).

Secondary service connection may be granted for a disability that is proximately due to, or aggravated by, a service-connected disease or injury. 38 C.F.R. § 3.310 (2013). Additional disability resulting from the aggravation of a nonservice-connected disability by a service-connected disability is also compensable under 
38 C.F.R. § 3.310(a). Allen v. Brown, 7 Vet. App. 439, 448 (1995) (en banc). 

In order to prevail on the issue of entitlement to secondary service connection, there must be (1) evidence of a current disability; (2) evidence of a service-connected disability; and, (3) nexus evidence establishing a connection between the service-connected disability and the current disability. See Wallin v. West, 11 Vet. App. 509, 512 (1998). 

The Veteran asserts that his heart conditions, including coronary artery disease (CAD), congestive heart failure (CHF) and left-sided enlargement of the heart, were caused by his service-connected deviated septum. He alleges that physicians have told him that his deviated septum causes trouble breathing, which overworks the heart, leading to his heart condition. He has not alleged, and the evidence does not suggest, that he incurred a heart condition during active duty service. There were no complaints or findings of a cardiovascular disorder during service or within the first post-service year. Rather, a cardiovascular disorder was not diagnosed until approximately 1995, and there is no evidence of record indicating that it had its onset during service or is related to any incident of service.

The Board finds the preponderance of the evidence weighs against the Veteran's claim and that service connection is not warranted. 

VA medical nexus opinions were obtained by the Board in May and October 2013 and in April and June 2014, and are the most probative evidence regarding a potential relationship between his service-connected deviated septum and his heart conditions. The 2013 VA examiner opined that it was less likely that there was a relationship between the deviated septum and his CAD, noting that his obesity and hypertension were risk factors for the disease. She supplemented this opinion, explaining that CAD occurs because the arteries that supply blood to the heart muscle become hardened and narrowed, which is caused by a buildup of cholesterol and other material. She said that difficult breathing would have nothing to do with that process. She further supplemented her opinion, opining that it was less likely the Veteran's deviated septum and difficulty breathing permanently aggravated his CAD, because he had other conditions that affected CAD, including diabetes and obesity. She said that the Veteran's difficulty breathing would not cause any aggravation. She also opined it was less likely that his deviated septum caused a breathing problem that overworked his heart. She said there is no evidence that his heart condition had undergone a permanent increase in severity that was due to his deviated septum.

The 2014 VA examiner opined against a relationship between the deviated septum and CHF and left-sided enlargement, as there was no medical literature or evidence supporting any. He supplemented his explanation, indicating there was no medical literature to support the Veteran's contention that his deviated septum caused difficulty breathing that overworked his heart, thereby causing or aggravating his CAD, CHF, or left-side enlargement.

Unfortunately, the Veteran's treatment records do not contain any entries suggesting his physicians believe there to be a relationship between his deviated septum and his heart conditions, either by causation or aggravation. The Veteran was asked to supplement the record in March 2013, pursuant to the Board's February 2013 remand, by submitting private medical records or authorizing VA to obtain them, but he did not respond. These records may have contained important information vital to his claim. His testimony, without supporting medical documentation, is insufficient to grant service connection. Lay evidence may be competent on a variety of matters concerning the nature and cause of disability. Jandreau v. Nicholson, 492 F.3d 1372, 1377 n.4 (Fed. Cir. 2007). However, the Veteran has not been shown to have the training or expertise to competently render an opinion as to whether his heart conditions were caused or aggravated by his deviated septum. The development of these conditions is apparently affected by numerous factors, including the Veteran's hypertension, obesity, and diabetes, and the Board finds these disabilities too complicated for a layman to competently diagnose and provide opinions on etiology. See Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed. Cir. 2009); Jandreau v. Nicholson, 492 F. 3d 1372, 1376-77 (Fed. Cir. 2007); Barr v. Nicholson, 21 Vet. App. 303, 309 (2007); Washington v. Nicholson, 19 Vet. App. 362, 368 (2005); Layno v. Brown, 6 Vet. App. 465, 469-71 (1994). Indeed, his theory, that his heart was overworked due his difficulty breathing, was investigated and rejected by physicians. Jandreau, supra. The Board finds that the opinions of the VA examiners outweigh that of the Veteran, given the examiners' medical training and expertise.

There is no other evidence suggesting a relationship between the Veteran's service-connected deviated septum and his heart conditions. The preponderance of the evidence is against this claim, and under these circumstances the benefit-of-the-doubt doctrine does not apply. 38 U.S.C.A. § 5107(b) (West 2002); 38 C.F.R. § 3.102 (2013). See also Gilbert v. Derwinski, 1 Vet. App. 49, 55 (1990). Accordingly, this claim must be denied.


TDIU

A total disability rating based upon individual unemployability may be assigned where the schedular disability rating is less than total, when it is found that the disabled person is unable to secure or follow a substantially gainful occupation. 
38 C.F.R. §§ 3.340, 3.341, 4.15, 4.16 (2013). This is so, provided the unemployability is the result of a single service-connected disability ratable at 60 percent or more, or the result of two or more disabilities, where at least one disability is ratable at 40 percent or more and there is sufficient additional service-connected disability to bring the combined rating to 70 percent or more. 38 C.F.R. § 4.16(a).

Here, the Veteran's only service-connected disabilities are traumatic deviated septum, rated as 10 percent disabling since January 1996; anosmia (reduced sense of smell), rated as 10 percent disabling since August 2001; and, hypogeusia (reduced sense of taste), rated as 10 percent disabling since November 2007. Thus, he has had a combined rating of 20 percent disabling from prior to November 2007 and a combined rating of 30 percent since November 2007. 38 C.F.R. § 4.25 (2013). As such, the Veteran does not meet the criteria for consideration for entitlement to a TDIU on a schedular basis because the ratings do not satisfy the percentage requirements. Therefore, a TDIU rating is not assignable under 38 C.F.R. § 4.16(a).

Nevertheless, the Veteran may be entitled to a TDIU on an extra-schedular basis if it is established that he is unable to secure or follow substantially gainful employment as a result of the effect of his service-connected disabilities. 38 C.F.R. § 4.16(b). Consequently, the Board must determine whether the Veteran's service-connected disability precludes him from obtaining and maintaining substantially gainful employment (work that is more than marginal, which permits the individual to earn a "living wage"). Moore v. Derwinski, 1 Vet. App. 356 (1991). The fact that a Veteran may be unemployed or has difficulty obtaining employment is not determinative. The ultimate question is whether the Veteran, because of service-connected disability, is incapable of performing the physical and mental acts required by employment, not whether he can find employment. Van Hoose v. Brown, 4 Vet. App. 361, 363 (1993). An inability to work due to advancing age may not be considered. 38 C.F.R. §§ 3.341(a), 4.19. In making its determination, VA considers such factors as the extent of the service-connected disability, and employment and educational background. 38 C.F.R. §§ 3.340, 3.341, 4.16(b), 4.19.

The Veteran has asserted that he is unable to engage in substantially gainful employment due to his deviated septum, anosmia, and hypogeusia. Specifically, he asserts he was trained to be a cook while in the service, and he was employed as one until the 1980's, after which he lost his sense of smell and taste, due to the deviated septum. He says he was fired as a cook because he was over-spicing the food. He asserts he has only ever been trained as a cook.

The record shows that the Veteran last engaged in employment as a stagehand in or around 1998, which suggests some training or knowledge as to physical or manual type labor and construction or contracting work. Records confirm that he graduated high school, and there is no indication of any barriers to learning. The May 2013 VA examiner agreed with the Veteran that his service-connected disabilities would prevent him from working as a cook, but would not prevent him from pursuing other types of employment. The record reflects the Veteran has multiple disabilities that physically affect his ability to work, including diabetes, chronic kidney disease, diabetic retinopathy, congestive heart failure, hypertension, and chronic hepatitis C. His VA physicians have noted that these listed disabilities, including a need for daily dialysis, prevent him from engaging in substantial gainful employment. See Letters from Drs. P.F. & A.C., received in August 2014. Neither of his physicians noted that the deviated septum, anosmia, or hypogeusia affect his ability to work. 

In consideration of this body of evidence, the Board finds that the Veteran's service-connected disabilities do not preclude him from securing and following a substantially gainful occupation. The Veteran has a high school education and additional work experience as a stagehand, suggesting some knowledge or training as to physical or manual type work. The VA examiner that addressed the issue opined that the Veteran could do other types of work, and that his disabilities only affected his ability to be a cook. The Board notes that the Veteran was asked to supplement the record with a formal application for a TDIU, which would have provided more information as to his education, training, and employment history, but that he did not respond. To the extent his deviated septum, anosmia, and hypogeusia affect the Veteran's employment, the assigned schedular ratings for those disabilities compensate the Veteran for such impairment. Thus, referral for extra-schedular consideration is not appropriate and a TDIU rating is not warranted. 38 C.F.R. § 4.16(b).

Accordingly, this claim must also be denied. The Board has considered the applicability of the benefit-of-the-doubt doctrine, but the preponderance of the evidence is against unemployability. Under these circumstances, that doctrine is not applicable. 38 U.S.C.A. § 5107(b); 38 C.F.R. §§ 3.102, 4.3; Gilbert, supra.


ORDER

The claim of entitlement to service connection for a heart condition is denied.

The claim of entitlement to a TDIU is denied.



____________________________________________
P.M. DILORENZO
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs