Citation Nr: 1452690 
Decision Date: 11/12/14 Archive Date: 12/02/14

DOCKET NO. 12-19 000 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Des Moines, Iowa


THE ISSUE

Entitlement to an initial rating in excess of 20 percent for lumbar spine degenerative disc disease at L4-S1 and central spine stenosis.


REPRESENTATION

Appellant represented by: Iowa Department of Veteran Affairs


ATTORNEY FOR THE BOARD

D. Johnson, Counsel



INTRODUCTION

The Veteran served on active duty from January 1994 to January 1997. 

This matter is before the Board of Veterans' Appeals (Board) on appeal of a May 2012 rating decision of the Des Moines, Iowa, Regional Office (RO) of the Department of Veterans Affairs (VA).

In February 2014, the Board denied a claim of service connection for bilateral hearing loss. At that time, the Board also remanded the case for further development, which has been substantially completed. Stegall v. West, 11 Vet. App. 268, 271 (1998).


FINDING OF FACT

Since the grant of service connection, lumbar spine degenerative disc disease at L4-S1 and central spine stenosis has been manifested by pain; forward flexion limited to no less than 40 degrees, even when considering functional impairment; without ankylosis; incapacitating episodes due to intervertebral disc syndrome (IVDS) lasting at least 4 weeks; or, neurological involvement of the lower extremities.


CONCLUSION OF LAW

The criteria for an initial rating in excess of 20 percent for lumbar spine degenerative disc disease at L4-S1 and central spine stenosis have not been met. 38 U.S.C.A. § 1155 (West 2002); 38 C.F.R. § 4.71a, Diagnostic Code (DCs) 5237, 5243 (2014).



REASONS AND BASES FOR FINDING AND CONCLUSION

Notice and Assistance

The appeal arises from the Veteran's disagreement with the initial evaluation following the grant of service connection. Once service connection is granted the claim is substantiated and additional notice is not required. 

VA's duty to assist has been met to the extent possible. The Veteran's service treatment records and VA and private treatment records have been obtained. The Veteran has not indicated, and the record does not contain evidence, that he is in receipt of disability benefits from the Social Security Administration.

A VA examination was conducted in February 2010. The VA examination report is adequate for the purposes of deciding the claim because the examiner conducted a clinical evaluation, reviewed the medical history, and described the disability in sufficient detail so that the Board's evaluation is an informed determination. 

In the February 2014 remand, the Board instructed that the Veteran be scheduled for a VA examination to evaluate the current level of severity of his back disability. This was so because the evidence indicated that the disability may have worsened and several years had passed since the previous examination. The Veteran was scheduled for a VA examination in April 2014. The Veteran failed to report to the scheduled examination, and he has not indicated that he did not receive notification of the examination or that he had good cause for failing to report. 

"The duty to assist is not always a one-way street." Wood v. Derwinski, 1 Vet. App. 190, 193 (1991). In failing to report to the scheduled examination, VA's attempt at assistance has been frustrated. The claim shall be rated on the evidence of record. See 38 C.F.R. § 3.655 (2014). 

There is no indication in the record that any additional evidence, relevant to the issue decided, is available and not part of the claims file. As there is no indication that any failure on the part of VA to provide additional notice or assistance reasonably affects the outcome of the case, the Board finds that any such failure is harmless. 

Analysis

The Veteran asserts his back disability is more severe than currently rated. 

Disability evaluations are determined by comparing a Veteran's symptoms with criteria set forth in VA's Schedule for Rating Disabilities, which are based on average impairment in earning capacity. 38 U.S.C.A. § 1155 (West 2002); 38 C.F.R. Part 4 (2014). When a question arises as to which of two ratings apply under a particular diagnostic code, the higher of the two evaluations is assigned if the disability more closely approximates the criteria for the higher rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7 (2014). After careful consideration of the evidence, any reasonable doubt remaining is resolved in favor of the Veteran. 38 C.F.R. § 4.3 (2014).

The Veteran's entire history is reviewed when making disability evaluations. See generally 38 C.F.R. § 4.1 (2014); Schafrath v. Derwinski, 1 Vet. App. 589 (1991). Where, as here, the question for consideration is the propriety of the initial evaluation assigned, consideration of the medical evidence since the effective date of the award of service connection and consideration of the appropriateness of a staged rating are required. See Fenderson v. West, 12 Vet. App. 119, 126 (1999). In making all determinations, the Board must fully consider the lay assertions of record. A layperson is competent to report on the onset and continuity of his current symptomatology. See Layno v. Brown, 6 Vet. App. 465, 470 (1994). 

Pursuant to 38 C.F.R. § 4.71a, Diagnostic Code 5237, disabilities pertaining to the spine will be evaluated under the General Rating Formula for Diseases and Injuries of the Spine (General Rating Formula). The General Rating Formula provides for a 100 percent evaluation for unfavorable ankylosis of the entire spine; a 50 percent evaluation for unfavorable ankylosis of the entire thoracolumbar spine; a 40 percent evaluation for forward flexion of the thoracolumbar spine 30 degrees or less, or favorable ankylosis of the entire thoracolumbar spine; and a 20 percent evaluation for forward flexion of the thoracolumbar spine greater than 30 degrees, but not greater than 60 degrees, or the combined range of motion of the thoracolumbar spine not greater than 120 degrees, or muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis. 38 C.F.R. § 4.71a, General Rating Formula.

Additionally, Note (1) provides: Evaluate any associated objective neurologic abnormalities, including, but not limited to, bowel or bladder impairment, separately, under an appropriate diagnostic code.

For VA compensation purposes, normal forward flexion of the thoracolumbar spine is zero to 90 degrees, extension is zero to 30 degrees, left and right lateral flexion are zero to 30 degrees, and left and right lateral rotation are zero to 30 degrees. The combined range of motion refers to the sum of the range of forward flexion, extension, left and right lateral flexion, and left and right rotation. The normal combined range of motion of the thoracolumbar spine is 240 degrees. 38 C.F.R. § 4.71a, General Rating Formula, Note (2); see also 38 C.F.R. § 4.71a, Plate V.

VA is required to apply the provisions of 38 C.F.R. §§ 4.40, 4.45, pertaining to functional impairment. When evaluating joint disabilities rated on the basis of limitation of motion, VA must consider granting a higher rating in cases in which functional loss due to pain, weakness, excess fatigability, or incoordination is demonstrated, and those factors are not contemplated in the relevant rating criteria. See 38 C.F.R. §§ 4.40, 4.45, 4.59 (2014); DeLuca v. Brown, 8 Vet. App. 202 (1995). 

As service connection is in effect for degenerative disc disease, the disability may also be evaluated under DC 5243 for evaluating IVDS. In addition to the General Rating Formula, the Formula for Rating IVDS Based on Incapacitating Episodes provides for a 40 percent rating requires evidence of incapacitating episodes having a total duration of at least 4 weeks but less than 6 weeks during the past 12 months; and a 60 percent rating requires evidence of incapacitating episodes having a total duration of at least 6 weeks during the past 12 months. 38 C.F.R. § 4.71a, DC 5243.

An incapacitating episode is defined as a period of acute signs and symptoms due to IVDS that requires bed rest prescribed by a physician and treatment by a physician. 38 C.F.R. § 4.71a, Formula for Rating IVDS Based on Incapacitating Episodes, Note (1). 

One private medical record dated in September 2009 was received from Dr. AbouAssaly. That record shows a prescription for Vicodin was refilled for the Veteran. There are no notes which indicate a period of bed rest was prescribed for IVDS.

Private medical records from Dr. Foster, at the Great River Spine Clinic, show the Veteran was referred to that practice by Dr. AbouAssaly. These medical records indicate that the Veteran's degenerative disc disease was treated with outpatient physical therapy, home exercise instruction, electrotherapeutic modalities and medication. There are no notes which indicate a period of bed rest was prescribed by a physician. A physical examination in January 2009 revealed lumbar spine range of motion was limited due to pain. The impression was degenerative disc disease at L4-5, L5-S1, and L3-4; particularly severe at l5-S1. A central disc protrusion was also noted at L4-5 and L5-S1.

Private medical records from Dr. Found, of the University of Iowa Hospitals and Clinics, show the Veteran was seen in September 2009 with a complaint of back pain with sitting, driving, and staying still. The Veteran indicated that physical therapy had not been successful at alleviating his pain. The Veteran also reported that he was employed part-time with UPS and full-time as an HVAC technician. His jobs involved light to heavy physical activity, including lifting items from 10 pounds (lbs.) to over 60 lbs.

On physical examination, the Veteran denied any bowel or bladder symptoms. He also denied experiencing pain, numbness, tingling, or weakness in his legs. He denied paresthesia or dysesthesias. Objectively, his lower extremities were neurologically intact. Specific ranges of lumbar spine motion were not provided. However, the physician noted that flexion and extension, and lateral bending of the trunk did not cause pain to radiate to the legs. The clinical impression was lumbar spine strain causing chronic low back pain. Home stretching and strengthening exercises were recommended, as was continuing anti-inflammatories. The recommendations did include a prescribed period of bed rest. Dr. Found indicated that the Veteran was not limited with regard to moderate activities. Regarding functional ability the Veteran could lift heavy object, stand for unlimited periods and run, but those activities are painful. 

In February 2010, the Veteran underwent a VA compensation examination. He complained of mild, constant back pain that mostly affected the right side of his back. His pain did not radiate. He denied urinary and bowel incontinence. Flare-ups of back pain occurred on a weekly basis and lasted from one to two days. Current treatment was noted to include medications, ice and hot packs, and stretching exercises. 

Objectively, muscle spasm and tenderness was present. There was no ankylosis of the spine. Range of motion testing during the examination revealed forward flexion to 50 degrees, extension to zero degrees, lateral flexion to 30 degrees bilaterally, and lateral rotation to 20 degrees bilaterally. With repetitive use there was additional limitation due to pain. Forward flexion was limited to 40 degrees on repetition, but there was no additional limitation of lateral rotation and flexion. The motor examination findings were normal and no abnormal sensation was noted on the sensory examination. The reflex examination revealed +1 ankle jerk on the left. Plantar reflexes were normal on the left, but the right showed no movement. The examiner noted that electrodiagnostic testing was not indicated. No periods of incapacitation over the last 12 months were noted. The examiner provided a pertinent diagnosis of lumbar spine degenerative disc disease, multilevel; objective x-ray evidence for disc height decreased at one level; no radicular symptoms; no evidence of spondylosis or spondylolisthesis.

A statement from the Veteran's chiropractor indicated that the Veteran has frequent episodes of moderate low back pain.

VA treatment records reflect complaints of chronic low back pain. Treatment notes dated in November 2012 and in February 2014 show he denied any motor or sensory change and bowel or bladder dysfunction. On objective evaluation, there was mild tenderness in the spine. The range of motion was noted to 'acceptable.' Straight leg raise test was negative and motor test was normal in the bilateral lower extremities.

Based on the evidence, a higher initial rating is not warranted under the under the General Rating Formula for Diseases and Injuries of the Spine. The February 2010 VA examination report shows flexion of the thoracolumbar spine was not limited to 30 degrees or less, even with consideration of the effects of painful motion and other factors, as the examiner indicated that limitation of motion was functionally limited to no less than 40 degrees. The VA and private treatment records do not contain any specific range of motion findings that would support the assignment of a higher rating. A rating in excess of 20 percent is also not warranted as there is no evidence of favorable ankylosis of the entire thoracolumbar spine. 

Considering the claim under the Formula for Rating IVDS Based on Incapacitating Episodes, DC 5243, does not result in a higher evaluation. A 40 percent rating under the Formula for Rating IVDS Based on Incapacitating Episodes requires evidence of incapacitating episodes having a total duration of at least 4 weeks during the past 12 months. 

In correspondence received from one of the Veteran's employers in June 2012, it was indicated that the Veteran had missed a total of 32 days between June 2011 and May 2012 due to ongoing back problems. 

In the Veteran's June 2012 notice of disagreement, he indicated that the only thing that relieves his pain is to lie flat in bed. 

In a June 2012 letter, Dr. AbouAssaly indicated that Veteran was absent from work for a total of 32 days due to "incapacitating Intervertebral Disc Syndrome."

In statements received in January 2013, both the Veteran and his wife reported that his back had caused him to miss over 30 days of work in the last 12 months and that he had increased his use of pain and sleeping medication as a result.

This evidence does not demonstrate incapacitating episodes due to lumbosacral spine degenerative disc disease, as defined by VA regulation, having a total duration of at least 4 weeks during any 12 month period.

The June 2012 letter from the Veteran's employer and Dr. AbouAssaly reflect the Veteran was absent from work for, at most, a total of four weeks and two days between June 2011 and May 2012 due to back pain. Although the statements received in January 2013, the Veteran and his wife indicate he lost more than 30 days between January 2012 and January 2013, the Board notes that at least 11 days actually overlap with the first 12-month period reported by the employer. 

Despite the June 2012 letter from Dr. AbouAssaly stating that the Veteran experienced a total of 32 days of "incapacitating Intervertebral Disc Syndrome," there is no evidence showing that the Veteran was actually prescribed bed rest and treatment by a physician, including Dr. AbouAssaly, during any of those 32 days. The one treatment record received from Dr. AbouAssaly is dated in September 2009 and reflects that he refilled a prescription for Vicodin. The Board also notes that none of the other medical records in the claim file reflect bed rest was prescribed for treatment of incapacitating episodes due to IVDS. Rather, treatment with physical therapy, medication, and lumbar injections is shown. 

Thus, the evidence does not establish that the Veteran has experienced incapacitating episodes as defined by VA regulations, and his back disability is appropriately rated under the General Rating Formula for Diseases and Injuries of the Spine. As noted, an initial rating of 20 percent has been assigned under the General Rating Formula.

A separate rating is not warranted for objective neurologic abnormalities. On examination in September 2009, Dr. Found indicated that the Veteran's lower extremities were neurologically intact. VA treatment records reflect that the Veteran denied any motor or sensory change and, bowel or bladder dysfunction. Also, during the February 2010 VA examination, the examiner indicated there were no radicular symptoms and that no further electrodiagnostic testing was indicated. Therefore a separate rating for any neurologic abnormality is not warranted.

The evidence shows that the Veteran's service-connected lumbar spine degenerative disc disease at L4-S1 and central spine stenosis results in symptoms of pain, limited motion, and without neurologic impairment of the lower extremities. The Board finds that the rating criteria considered reasonably describe the Veteran's disability level and these symptoms. The Veteran's disability picture is contemplated by the rating schedule, the assigned schedular evaluation for the service-connected lumbar spine degenerative disc disease at L4-S1 and central spine stenosis is adequate, and referral for extraschedular consideration is not required. Thun v. Peake, 22 Vet. App. 111 (2008); 38 C.F.R. § 3.321(b)(1) (2013).

Finally, it is noted that the Veteran is currently employed. As there is no evidence of unemployability, the question of entitlement to a total disability rating based on individual unemployability (TDIU) is not raised. Rice v. Shinseki, 22 Vet. App. 447 (2009). 

 
ORDER

An initial rating in excess of 20 percent for lumbar spine degenerative disc disease at L4-S1 and central spine stenosis is denied.




____________________________________________
RYAN T. KESSEL
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs