Bruce **WOOD**, Appellant,

v.

Edward J. **DERWINSKI**, Secretary of Veterans Affairs, Appellee.

No. 89–50.

United States Court of Veterans Appeals.

Submitted Dec. 12, 1990.

Decided March 28, 1991.

Rick Surratt (non-attorney practitioner) was on the brief, for appellant.

Raoul L. Carroll, Gen. Counsel, Barry M. Tapp, Asst. Gen. Counsel, Pamela L. Wood, Deputy Asst. Gen. Counsel, and Thomas A. McLaughlin were on the brief, Washington, D.C., for appellee.

Before NEBEKER, Chief Judge, and HOLDAWAY and STEINBERG, Associate Judges.

HOLDAWAY, Associate Judge:

Bruce Wood appeals a September 29, 1989, decision from the Board of Veterans' Appeals (BVA) denying entitlement to service connection for post-traumatic stress disorder (PTSD). The BVA rendered its decision on the following two grounds: (1) that the evidence of record did not objectively support the diagnosis of PTSD; and (2) that no independent evidence was shown to corroborate the veteran's claim that he had been exposed to a psychologically traumatic event while in service. We affirm the BVA decision.

Appellant served in the Republic of Vietnam as a cannoneer from December 20, 1970, to June 17, 1971. He was honorably discharged on June 30, 1971, with no indication in his records, or, indeed, from any source, of any disability, mental or physical. Nonetheless, appellant now alleges that, during his tour of duty, he witnessed some emotionally traumatic incidents which eventually resulted in PTSD. Although the traumatic incidents were never verified in any manner by separate objective evidence, he argues that the nature of his service, the fact that he served in Vietnam, and the clinical diagnoses of PTSD by a civilian doctor and social worker should be dispositive of his contention that his condition was service connected.

Three years after his service in Vietnam, appellant initiated counseling sessions with a clinical social worker. He initiated counseling because of marital difficulties, including violent episodes, which appellant felt were related to his experiences in Vietnam. Appellant was seen by the social worker from May 1975 to January 1976 in regular counseling sessions. In 1979, appellant was convicted of second-degree murder. He was sentenced to fifteen years to life.

In December 1985, the murder conviction was reversed and remanded for a new trial. *See People v. Wood,* 66 N.Y.2d 374, 488

N.E.2d 86, 479 N.Y.S.2d 340 (1985). (Appellant was apparently convicted again after a re-trial, because he is still incarcerated.) A psychiatrist involved in the murder case wrote to appellant's public defender in May 1986 with a final diagnostic summary of appellant's psychological condition at the time of the homicide. In that letter, the psychiatrist stated, "[Wood] definitely showed Post Traumatic Stress Disorder of the Chronic Type complicated by substance abuse and/or chemical dependency initiated in Vietnam." It is not clear whether this statement means that it was the PTSD that began in Vietnam or whether the psychiatrist was referring only to the substance abuse and chemical dependency.

From February through June of 1986, appellant saw the same social worker weekly. On June 18, 1989, the social worker provided a statement to the BVA giving his professional opinion that Wood suffered from borderline personality and chronic-type PTSD and that the social worker believed that these conditions coexisted.

In February 1988, appellant filed his claim with the Veterans' Administration (now the Department of Veterans Affairs) (VA). In June 1988, appellant filed a statement in support of the claim that outlined the traumatic events he contends caused his PTSD. The VA sent this information to the U.S. Army and Joint Services Environmental Support Group (Environmental Support Group), a group which conducts research on behalf of veterans to aid them in substantiating their claims. The Environmental Support Group responded that its research was unsuccessful because the lack of specific combat dates, places and types of incidents made the research impossible.

The VA made a second request for information from the Environmental Support Group in November 1988. This time, at the Environmental Support Group's suggestion, appellant's DA Form 20 and his service record were forwarded. These documents showed the units to which appellant was assigned, his duty specialty, and the dates he was in Vietnam. The Environmental Support Group's response was again negative, citing the vagueness of appellant's description of events, the lack of specific locations and dates and, for some of the events, the type of some of the incidents involved (civilian deaths). A VA rating decision was issued on January 4, 1989, denying service connection for PTSD.

In June 1989, appellant appealed to the BVA, which also denied service connection for PTSD. *Bruce Wood*, loc. no. 927709 (BVA Sept. 29, 1989). A timely appeal was filed in this Court on December 11, 1989.

■ For service connection to be granted under the VA regulations, the facts of the case must "establish that a particular injury or disease resulting in disability was incurred coincident with service.... This may be accomplished by *affirmatively* showing inception or aggravation during service." 38 C.F.R. § 3.303(a) (1990) (emphasis added). A finding of service connection, or, in this case, no service connection, is a finding of fact. The function of this Court in reviewing findings of fact by the BVA is to decide only whether such factual decisions constituted clear error. "[I]f there is a 'plausible' basis in the record for the factual determination," we must affirm. *Gilbert v. Derwinski*, 1 Vet.App. 49, 53 (1990).

■ We have carefully examined the record and are convinced that there is a plausible basis for the factual finding of the BVA, i.e., that there was insufficient evidence to support a finding of PTSD stemming from appellant's military service. Contrary to the contentions of appellant, the BVA was not bound to accept his uncorroborated account of his Vietnam experiences; nor was the BVA required to accept the social worker's and psychiatrist's unsubstantiated (if somewhat ambiguous) opinions that the alleged PTSD had its origins in appellant's Vietnam service. This is especially true since there was a considerable passage of time between the putative stressful events recounted by appellant and the onset of the alleged PTSD. Also, as noted by the BVA, neither appellant's military specialty (cannoneer), nor his service records, disclose that the nature of his

duties exposed him to a more than ordinary stressful environment, even given the fact that service in a combat zone is stressful in some degree to all who are there, whatever their duties and experiences. It was reasonable, therefore, for the BVA to require, in this case, some corroboration of the events that appellant alleges happened to him in Vietnam.

Appellant now argues in his brief that, particularly because the health professionals accepted his Vietnam experiences as truthful, the BVA was required to do the same. That misconceives the role of the BVA. The BVA has the duty to assess the credibility and weight to be given to the evidence. Such assessments will be overturned only if "clearly erroneous." *Gilbert,* at 52.

Of course, if the BVA decision fails to give sufficient "reasons or bases" for accepting or rejecting critical evidence, expert or otherwise, then a remand for further proceedings may be appropriate. *See Gilbert,* at 55–57, 58–59. However, in this case, we find the BVA opinion concerning this evidence to be both plausible and adequately explained. *Bruce Wood,* loc. no. 927709 at 3–4 (BVA Sept. 29, 1989).

■ One other issue remains that was not directly raised by appellant but was alluded to in his brief: Did the VA adequately assist appellant in developing his claim? *See* 38 U.S.C. § 3007(a) (1989). Complicating this issue is the fact of the appellant's incarceration. Obviously, in such situations the opportunity for face-to-face assistance is greatly reduced, if not eliminated; the corollary of this is the necessity of ensuring that all VA written communication is helpful and clear in explaining to a veteran what evidence he needs together with advice and help in obtaining it. In the context of this case, as noted above, the *sine qua non* of establishing a claim is some corroboration of the alleged "stressors" that were service connected. Appellant obviously needed help in obtaining this evidence. The Department did, in a reasonably clear way, advise appellant that independent evidence was needed and that it was obtainable only if appellant could furnish some concrete data as to time, place, and witnesses. Two attempts were made to get such information despite the sparsity of the data furnished by appellant. His service record was produced in an attempt to obtain corroboration. Appellant failed twice to be sufficiently specific about the stressful events he had alleged.

While the VA's help and advice in this case was not a model to be followed, an examination of the record satisfies us that appellant was adequately on notice that more was required of him if there was to be a successful search for the necessary evidence. The factual data required, i.e., names, dates and places, are straightforward facts and do not place an impossible or onerous task on appellant. The duty to assist is not always a one-way street. If a veteran wishes help, he cannot passively wait for it in those circumstances where he may or should have information that is essential in obtaining the putative evidence.

■ We do, however, caution those who adjudicate claims of incarcerated veterans to be certain that they tailor their assistance to the peculiar circumstances of confinement. Such individuals are entitled to the same care and consideration given to their fellow veterans.

The decision of the BVA is AFFIRMED.

STEINBERG, Associate Judge, concurring.

I concur in the opinion of the Court. I write separately to emphasize the following point. Department of Veterans Affairs (VA) regulations require VA personnel conducting a personal hearing for a claimant at the regional office level "to explain fully the issues and *suggest the submission of evidence which the claimant may have overlooked and which would be of advantage to the claimant's position."* 38 C.F.R. § 3.103(c)(2) (1990) (emphasis added). I am not prepared to conclude at this point that VA is required to provide this amount of assistance as part of its statutory "duty to assist" VA claimants under 38 U.S.C. §§ 3007(a) (the Secretary "shall assist such a claimant [with a well-grounded claim] in developing the facts pertinent to the claim") and 241(3) (the Secretary "shall provide, to the maximum extent possible, aid and assistance to ... veterans ...

and eligible dependents ... in the preparation and presentation of claims") (1988). However, requiring by regulation that VA regional office personnel provide this amount of assistance to claimants who request and receive such hearings and not to claimants who don't might not withstand a "rational basis" analysis under the Due Process Clause of the Fifth Amendment[1] if it is concluded that Congress has authorized this disparate treatment under 38 U.S.C. §§ 3007(a), 241(3). At least the same amount of assistance would seem to be owed to a VA claimant who does *not* request a hearing, especially one for whom, as was the situation for the appellant here, the opportunity for face-to-face assistance is greatly reduced, if not eliminated, by the circumstances of the case. (It seems to me that the Court's opinion agrees with this assertion in concluding that "incarcerated veterans ... are entitled to the same care and consideration given their fellow veterans." *Majority opn., ante* p. 193.) These

circumstances do in fact exist for many VA claimants who live hundreds of miles distant from the nearest hearing site. It would seem that such claimants have a need for more, not less, VA assistance under statutory sections 3007(a) and 241(3).

As stated in the opinion of the Court, VA seems to have done the minimum to fulfill its statutory "duty to assist" the claimant here in light of the information he provided, although for me this is a very close call. If this claimant requests more specific assistance or advice in the future, I trust it will be forthcoming. I also trust that the Department (and, if necessary, the Congress) will examine the basis for the disparate treatment, discussed above, which seems inherent in VA's regulations.

---

1. The "rational basis" test requires that "a classification 'must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.'" *Reed v. Reed,* 404 U.S. 71, 76, 92 S.Ct. 251, 254, 30 L.Ed.2d 225 (1971) (invalidating under 14th Amendment Equal Protection Clause state statute giving preference to males or females in the appointment of administrators of intestate estates) (quoting *Royster Guano Co. v. Virginia,* 253 U.S. 412, 415, 40 S.Ct. 560, 561–62, 64 L.Ed. 989 (1920)). *Accord Cleburne v. Cleburne Living Center,* 473 U.S. 432, 450, 105 S.Ct. 3249, 3259–60, 87 L.Ed.2d 313 (1985) (invalidating under 14th Amendment Equal Protection Clause city ordinance requiring special-use permit for group home for mentally retarded persons); *U.S. Dept. of Agriculture v. Moreno,* 413 U.S. 528, 538, 93 S.Ct. 2821, 2827–28, 37 L.Ed.2d 782 (1973) (invalidating under Fifth Amendment Due Process Clause as "wholly without any rational basis" Federal Food Stamp Act provision denying food stamps to households in which unrelated persons resided); *James v. Strange,* 407 U.S. 128, 140, 92 S.Ct. 2027, 2034, 32 L.Ed.2d 600 (1972) (invalidating under 14th Amendment Equal Protection Clause state statute which did not allow indigent defendants all exemptions provided other judgment debtors); *Jackson v. Indiana,* 406 U.S. 715, 730, 92 S.Ct. 1845, 1854, 32 L.Ed.2d 435 (1972) (invalidating under 14th Amendment Equal Protection Clause court order which committed, until certified sane, mentally defective deaf mute accused of robbery); *Stanley v. Illinois,* 405 U.S. 645, 649, 92 S.Ct. 1208, 1211–12, 31 L.Ed.2d 551 (1972)

(invalidating under 14th Amendment Equal Protection Clause state action denying unwed father a hearing, provided to all other parents, before custody of his children was taken from him); *Eisenstadt v. Baird,* 405 U.S. 438, 447, 92 S.Ct. 1029, 1035, 31 L.Ed.2d 349 (1972) (invalidating under 14th Amendment Equal Protection Clause state statute restricting contraceptive distribution that treated married and unmarried persons differently); *Aladdin's Castle, Inc. v. City of Mesquite,* 630 F.2d 1029, 1039–40 (1980), *undisturbed on remand* (from Supreme Court, 455 U.S. 283, 102 S.Ct. 1070, 71 L.Ed.2d 152 (1982)), 713 F.2d 137, 139 (5th Cir.1983) (invalidating under 14th Amendment Equal Protection Clause city ordinance barring individuals under age 17 from entering coin-operated-machine amusement centers unless accompanied by adult). It has been axiomatic since *Bolling v. Sharpe,* 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954), that the 14th Amendment's Equal Protection Clause guarantee applies to the Federal Government through the Fifth Amendment's Due Process Clause. *See Frontiero v. Richardson,* 411 U.S. 677, 680 n. 5, 93 S.Ct. 1764, 1767 n. 5, 36 L.Ed.2d 583 (1973); *Shapiro v. Thompson,* 394 U.S. 618, 641–42, 89 S.Ct. 1322, 1335–36, 22 L.Ed.2d 600 (1969); *Schneider v. Rusk,* 377 U.S. 163, 168, 84 S.Ct. 1187, 1190, 12 L.Ed.2d 218 (1964). So axiomatic is the notion that the Equal Protection Clause is equally applicable to the Federal Government that the Supreme Court refers to "the equal protection component of the Due Process Clause of the Fifth Amendment." *Moreno,* 413 U.S. at 533, 93 S.Ct. at 2825.