Citation Nr: 1448565 
Decision Date: 10/31/14 Archive Date: 11/05/14

DOCKET NO. 11-03 165 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Detroit, Michigan


THE ISSUES

1. Entitlement to a rating in excess of 30 percent for service-connected aortic valve replacement secondary to subacute bacterial endocarditis.

2. Entitlement to a total disability rating based on individual unemployability due to service-connected disabilities (TDIU).


REPRESENTATION

Appellant represented by: Marine Corps League


WITNESS AT HEARING ON APPEAL

The Veteran and his spouse


ATTORNEY FOR THE BOARD

L. A. Rein, Counsel


INTRODUCTION

The Veteran served on active duty from September 1978 to December 1986.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from an August 2009 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Seattle, Washington, which continued the previously assigned 30 percent disability rating for the service-connected aortic valve replacement. In a letter dated approximately one week later in August 2009, the RO in Detroit, Michigan notified the Veteran of that determination. [Due to the location of the Veteran's residence, jurisdiction of his appeal remains with the RO in Detroit, Michigan.] 

In August 2011, the Veteran presented sworn testimony during a personal hearing at the Central Office in Washington D.C., which was chaired by the undersigned Veterans Law Judge. A transcript of the hearing has been associated with the Veteran's VA claims file.

In September 2012, the Board remanded these matters for additional development. In an April 2014 rating decision, the RO granted service connection for a surgical scar as secondary to the Veteran's service-connected aortic valve replacement disability. In an April 2014 supplemental statement of the case, the RO continued the 30 percent rating for the Veteran's service-connected aortic valve replacement disability and denied entitlement to a TDIU. 

The appeal is REMANDED to the Agency of Original Jurisdiction (AOJ). VA will notify the appellant if further action is required.


REMAND

Although further delay is regrettable, the Board finds that additional development is necessary prior to appellate review. A remand by the Board confers on the Veteran, as a matter of law, the right to compliance with the remand. Stegall v. West, 11 Vet. App. 268 (1998).

The Board's September 2012 remand instructions requested that the Veteran be provided with a VA examination to determine the current severity of his service-connected aortic valve replacement disability, to include an exercise test to determine METs. The instructions noted that, if a laboratory determination of METs by exercise testing could not be done for medical reasons, the examiner was specifically requested to explain the medical reasons which prevent such testing. In December 2012, the Veteran was afforded a VA heart examination in which exercise testing was not performed. However, the VA examiner failed to provide any explanation for not performing exercise testing. In addition, the VA examiner relied on test results previously obtained, to include June 2009 chest X-rays, a March 2011 echocardiogram, an April 2011 Holter monitor, and August 2011 exercise stress test results without any contemporaneous testing performed or providing an opinion that there was a contraindication for such testing. 

In this regard, VA regulation require that METS testing be used to evaluate the severity of cardiovascular system disabilities in all cases except when there is a medical contraindication, LVEF testing is 50 percent or less, chronic congestive heart failure is present, there have been more than one episode of congestive heart failure within the past year, or a 100 percent evaluation can be assigned on another basis. See 38 C.F.R. § 4.100. Therefore, as the examiner did not state that METs testing was contraindicated and none of these other factors were present, the Board finds that the September 2012 VA examination is inadequate and that another remand is warranted to obtain a VA examination with METs testing and other contemporaneous testing, as indicated. See Barr v. Nicholson, 21 Vet. App. 303, 311-12 (2007) (When VA undertakes to provide a VA examination or obtain a VA opinion, it must ensure that the examination or opinion is adequate).
In addition, the Board notes that, pursuant to the September 2012 remand instructions, the RO request the Veteran to provide authorization for VA to obtain outstanding treatment records, to include treatment received at NIH since July 2008 and from private medical providers, to include Dr. B.T.E., as referenced by the Veteran during the August 2011 Board hearing. However, no response was received from the Veteran. The Board emphasizes that, although the VA has a duty to assist the Veteran with the development of the evidence in connection with his claims, the duty to assist is not always a one-way street. Wood v. Derwinski, 1 Vet. App. 190 (1991). The Board finds that the Veteran should be afforded an additional opportunity to provide information that could aid in his claims. The Board strongly encourages the Veteran to take full advantage of this opportunity. 

Accordingly, the case is REMANDED for the following actions:

1. Request that the Veteran provide or identify any additional relevant evidence (both VA and non-VA health care records) that is not already of record. Specifically, ask that the Veteran provide VA with authorization to obtain medical records from NIH (to include treatment records dated since July 2008); and from Dr. B.T.E. If, in the alternative, the Veteran wants to obtain and submit these records, he may do so. If there was no continuing treatment, the Veteran should so indicate.

2. Then, schedule the Veteran for a VA examination, by an examiner with the appropriate expertise, to determine the current severity of the service-connected aortic valve replacement. The claims file, to include a copy of this REMAND, must be made available to the examiner for review in conjunction with this examination. A notation that this review has occurred should be made in the file. 

All necessary tests and studies should be performed, to include the appropriate exercise test(s) needed to calculate properly the Veteran's METs. [The examiner must specify what level of activity warrants the assignment of the estimated METs level.] The examiner should also describe the current status of the Veteran's aortic valve replacement to include a description of all functional incapacity related to this disability, as well as the need for any current treatment or medication. In addition, the examiner is asked to address the following: 

(a) If a laboratory determination of METs by exercise testing cannot be done for medical reasons, the examiner should explain the medical reasons which prevent such testing. The examiner should then estimate the level of activity (expressed in METs and supported by specific examples, such as slow stair climbing) that results in dyspnea, fatigue, angina, dizziness, or syncope. 

(b) The examiner should discuss the presence or absence of any left ventricular dysfunction-including an ejection fraction (in percentage); the number of any episodes of acute congestive heart failure in the past year; and the presence or absence of chronic congestive heart failure. 

(c) The examiner should describe the number of any episodes of paroxysmal atrial fibrillation or other supraventricular tachycardia that the Veteran has experienced in the past year, as documented by an electrocardiogram or Holter monitor. 

(d) The examiner is also asked to comment upon the impact of the Veteran's aortic valve replacement upon his ability to maintain gainful employment. 

Complete rationale for all opinions is required. If the examiner feels that the requested opinions cannot be rendered without speculation, he/she should state whether the need to speculate is caused by a deficiency in the state of general medical knowledge (i.e., no one could respond given medical science and the known facts) or by a deficiency in the record or the examiner (i.e., additional facts are required, or the examiner does not have the needed knowledge or training). 

3. Following completion of the foregoing, review the claims file and ensure that all of the requested development has been completed. In particular, determine whether the examiner has responded to all questions posed. If not, the report must be returned for corrective action. 38 C.F.R. § 4.2 (2014). 

4. Then, readjudicate the claims for a disability rating greater than 30 percent for aortic valve replacement disability and for a TDIU. If any decision is adverse to the Veteran, issue a supplemental statement of the case and allow the appropriate time for response. Then, return the case to the Board.

The Veteran has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999). This claim must be afforded expeditious treatment. The law requires that all 





(CONTINUED ON NEXT PAGE)

claims remanded by the Board or the United States Court of Appeals for Veterans Claims (Court) for additional development or other appropriate action must be handled in an expeditious manner. 38 U.S.C.A. §§ 5109B, 7112 (West Supp. 2013).



_________________________________________________
THERESA M. CATINO
Veterans Law Judge, Board of Veterans' Appeals

Only a decision of the Board is appealable to the Court. 38 U.S.C.A. § 7252 (West 2002). This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of your appeal. 38 C.F.R. § 20.1100(b) (2013).