Citation Nr: 1533654 
Decision Date: 08/06/15 Archive Date: 08/20/15

DOCKET NO. 09-23 052A ) DATE
 )
 )
On appeal from the
Department of Veterans Affairs Regional Office in Philadelphia, Pennsylvania


THE ISSUES

1. Entitlement to service connection for a left elbow disability.

2. Entitlement to service connection for lumbar spine disability.

3. Entitlement to service connection for residuals of a laminectomy / neck disability.

4. Entitlement to service connection for a left knee disability.

5. Entitlement to service connection for a right knee disability, to include as secondary to a left knee disability.

6. Entitlement to service connection for a general neurological disorder.



WITNESS AT HEARING ON APPEAL

Appellant
ATTORNEY FOR THE BOARD

A. Barone, Counsel


INTRODUCTION

The appellant is a Veteran who served on active duty from April 1977 to March 1981. This matter is before the Board of Veterans' Appeals (Board) on appeal from an October 2007 rating decision by the Philadelphia, Pennsylvania Department of Veterans Affairs (VA) Regional Office (RO). In November 2012, the Board remanded this appeal to honor the Veteran's request for a hearing. In October 2013, a Travel Board hearing was held before the undersigned; a transcript of the hearing is associated with the record. In March 2014, the Board issued a decision resolving a portion of the appeal and remanding the issues remaining on appeal for additional development.

During the processing of the March 2014 Board remand, the Appeals Management Center (AMC) issued a March 2015 rating decision partially addressing some of the issues in appellate status; it also issued a March 2015 supplemental statement of the case (SSOC) addressing the issues of service connection for (1) left elbow disability, (2) lumbar spine disability, (3) residuals of a laminectomy, (4) left knee disability, and (5) right knee disability. In the March 2015 SSOC, the AMC found that the following issues remanded by the Board were no longer in appellate status: service connection for (1) breast cancer, (2) lung disease, (3) a general neurological disorder, and (4) a headache disorder, claimed as migraines. The Board has carefully reviewed the matter and has determined that one of these issues remains pending in appellate status (specifically, the neurological disorder claim, as explained below).

The March 2015 rating decision awarded service connection for breast cancer and associated residuals; the Veteran was notified that the award was considered a full grant of the claim on appeal (service connection for breast cancer) and the Board finds that this issue has been resolved. The March 2015 rating decision awarded service connection for minimal left subpleural fibrotic or emphysematous change; the Veteran was notified that the award was considered a full grant of the claim on appeal (service connection for a lung disease) and the Board finds that this issue has been resolved. The March 2015 rating decision awarded service connection for "traumatic brain injury to include migraines, dizziness and blacking out"; the Veteran was notified that the award was considered a full grant of the claim on appeal (service connection for a headache disorder, claimed as migraines) and the Board finds that this issue also has been resolved. It appears that the AMC believed that the award of service connection for traumatic brain injury (TBI) with associated residuals together with the award of service connection for basilar artery dilation and for right upper extremity radiculopathy also resolved the appellate issue of service connection for a general neurological disorder. However, the Veteran subsequently continued to submit contentions in support of her claim of service connection for a general neurological disorder (including in April 2015 correspondence with a section entitled "Neurological Condition"). It appears that the March 2015 award of service connection for TBI contemplating "dizziness" might encompass all of the Veteran's contentions concerning "neurological condition," but it is not entirely clear that this is the case. The Board is unable to find that the award of service connection for the TBI, basilar artery dilation, and right upper extremity radiculopathy necessarily encompasses the entirety of the disability claimed in the Veteran's appeal for service connection for a "general neurological disorder," as previously characterized. Accordingly, the Board finds that the claim of service connection for a general neurological disorder (other than associated with TBI) remains pending in appellate status.

The March 2015 rating decision also awarded service connection for "cervical radiculopathy right upper extremity," but did not award service connection for any primary neck or primary cervical spine disability; the March 2015 SSOC continues to list the claim for service connection for residuals of laminectomy (which appears to concern neck disability and past neck surgery) as unresolved and on appeal, and the March 2015 rating decision's code sheet continues to list "ANY NECK CONDITION" as "NOT SERVICE CONNECTED." Thus, the Board must consider the claim of service connection for a laminectomy/neck disability as remaining on appeal before the Board, The issue is characterized accordingly.
The appeal is REMANDED to the Agency of Original Jurisdiction (AOJ). VA will notify the appellant if further action is required.


REMAND

In March 2014, the Board remanded nine issues on appeal for additional development. During the processing of that remand, the RO issued a March 2015 rating decision resolving three of the issues on appeal through various awards of service connection for claimed disabilities. The remaining issues in appellate status include five service connection claims featuring orthopedic disabilities (of the back and various joint), and featuring a neurologic disorder. These issues, as discussed in the Board's March 2014 remand, required VA examinations with medical opinions to address critical medical etiological questions, including specifically a VA examination by an orthopedic specialist (as a prior VA examination report recommended such to address at least the Veteran's claimed knee disabilities). The record reflects that the Veteran (citing a past traumatic experience at that facility) declined to report to the East Orange, New Jersey VA facility, and that attempts to make alternate arrangements were unsuccessful. In accordance with the Board's remand directives, the RO attempted to obtain an orthopedic specialist's medical opinions on these matters based on the information already in the record. However, documentation dated in March 2015 indicates that a doctor serving as a Chief of Compensation and Pension for a VA medical facility in New Jersey reported that "Orthopedic Opinion cannot be rendered as there [are] no recent musculoskeletal C&P evaluations [] in E-folder. Veteran did not have any C&P musculoskeletal evaluations @ our medical center & refused examination at our location." The author instructed: "Please refer veteran to a location of her choice." Subsequent documentation reflects that further attempts to make VA examination arrangements acceptable to the Veteran were unsuccessful (including as documented in an April 2015 report of contact).

April and May 2015 VA medical records document that the Veteran was receiving non-VA private orthopedic treatment from a "Dr. Williams" at "Coordinated Health." Records of this treatment are not available for review in the record. Notably, a June 2015 entry in the Veteran's VA medical records indicates that VA obtained and "SCANNED OUTSIDE MEDICAL RECORDS" featuring a "COORDINATED HEALTH NOTE." The scanned private medical records were "attached to this note" with instructions for electronically viewing the documents in a system that is inaccessible to the Board. It appears that the inaccessible scanned documents may merely feature an MRI order from Dr. Williams (discussed in other June 2015 entries in the VA medical records). It does not otherwise appear that any attempt has been made to obtain the complete set of pertinent private medical records from Dr. Williams.

The 2015 VA medical reports indicate that the Veteran has been receiving recent orthopedic treatment (with specifically identified attention to her claimed bilateral knee symptoms. VA's duty to assist includes making reasonable attempts to secure and obtain private medical records. See 38 C.F.R. §§ 3.159(c)(1). As the outstanding private medical records are specifically indicated to be pertinent to the knee issues on appeal, and private orthopedic medical care may reasonably be pertinent to the other orthopedic disabilities at issue in this appeal, a remand for appropriate action to assist the Veteran in obtaining these records is warranted. The Board also again notes that the AOJ's inability to obtain a VA medical opinion addressing these issues has been attributed, in part, to the absence of recent medical records concerning the claimed orthopedic disabilities.

The March 2014 Board remand directed that "[t]he RO should ask the Veteran to identify all providers of medical evaluation and/or treatment she has received for the disabilities on appeal, and to provide releases for complete records of treatment from all private providers identified." A May 2014 letter was sent to the Veteran requesting that she submit any treatment records in her possession and that she should complete an enclosed authorization and consent form if she wanted VA to help her obtain any medical records. Subsequently, the Veteran appears to have contended that there is medical evidence missing from her claims-file (including as asserted in an April 2015 letter, in the section entitled "Appeals Management Center neglecting their duties to assist veteran"). The AOJ shall have the opportunity during the processing of this remand to ensure that the evidentiary record is complete.
Additionally, March 2015 VA medical reports indicate that the Veteran had an appointment for a VA orthopedic evaluation of "multiple complaints," but was dissatisfied with the evaluation as she was not afforded the full 40 minute evaluation she had sought. A later March 2015 entry shows that the involved VA orthopedic surgeon stated: "I will see the patient for a 40 minute clinical evaluation and treatment." There is currently no documentation of record of the anticipated VA orthopedic evaluation that was being arranged. A June 2015 Compensation and Pension examination report (focused upon evaluation of breast cancer) includes documentation of a December 2014 whole-body bone scan that revealed a number of joint abnormalities including concerning her knees and spine confirming "[e]xtensive joint space disease." A June 2015 entry in the available VA medical records indicates that the Veteran "is being followed in Orthopaedic Clinic." As this case is being remanded for other needed development, the AOJ shall have the opportunity to add an updated set of the Veteran's VA medical records (for any ongoing pertinent medical treatment) to the claims-file during the processing of this remand. Additionally, any pertinent medical records that have been scanned into VA digital repositories that are not available for the Board's review must be made available for review in the record; in particular, the AOJ should make any pertinent contents of the June 2015 "SCANNED OUTSIDE MEDICAL RECORDS" featuring a "COORDINATED HEALTH NOTE" available for the Board's review in the Veteran's record. All pertinent evidence in VA's possession must be secured for the Board's review to allow for a fully informed final appellate review. Bell v. Derwinski, 2 Vet. App. 611 (1992).

Finally, the Board notes that the March 2015 SSOC states that the Veteran "failed to report for [her] examination scheduled at the Wilkes-Barre VA Medical Center," and has "not offered any reason why [she] did not report for this examination." There has been significant difficulty and some confusion regarding the attempts to arrange for a VA orthopedic examination in connection with this appeal. The Veteran appears to have been seeking a VA orthopedic examination at the Wilkes-Barre facility or at a facility in Allentown, Pennsylvania (rather than at the East Orange, New Jersey facility to which she objects). The record reflects that VA's attempts to accommodate this request may have been complicated by a lack of an available orthopedist at the facility of the Veteran's preference. An April 2015 report of contact indicates that the Veteran declined the opportunity to take a VA disability benefits questionnaire to a private provider to address the medical questions pertinent to her claims. An April 2015 letter from the Veteran appears to suggest that the VA examination in Wilkes-Barre cited in the SSOC was cancelled by VA, and not by herself. On remand, the AOJ shall have the opportunity to make one more attempt to arrange for a VA orthopedic examination in connection with the Veteran's claims on appeal. The Board observes that VA's duty to assist is not a "one way street" See Wood v. Derwinski, 1 Vet.App. 190 (1991). She has a concomitant duty to co-operate. The development sought is to assist her in substantiating her claims; her repeated failures to co-operate with reasonable VA requests in those instances where her participation is necessary for development sought will not advance her claims; and if evidence in support of the claims remains lacking due to her failure to co-operate, they will be denied.

Finally, as discussed in greater detail in the Introduction above, the Board finds that the issue of service connection for a general neurological disorder remains formally pending in appellate status and has not been entirely resolved nor addressed in an SSOC since the March 2014 Board remand. The AOJ shall have the opportunity to obtain any clarification of the Veteran's intentions and contentions with regard to this issue (i.e., whether she is pursuing service connection for a neurological disability beyond what was s service-connected in the March 2015 rating decision). If so, an SSOC addressing the unresolved issue is procedurally necessary and was directed by the Board's March 2014 remand. The AOJ shall have the opportunity to appropriately address the claim of service connection for a general neurological disorder with readjudication and issuance of an SSOC. Where the remand orders of the Board are not complied with, the Board errs as a matter of law when it fails to ensure compliance. Stegall v. West, 11 Vet. App. 268, 271 (1998). 

Accordingly, the case is REMANDED for the following action:

1. The AOJ should contact the Veteran, to obtain clarification of her current intentions and remaining contentions with regard to the issue of service connection for a general neurological disorder (specifically, whether she is pursuing service connection for any neurological disability beyond the extent of what was established as service-connected in the March 2015 rating decision, and if so, to identify with some specificity the disability, symptoms, impairment she seeks to have service-connected).

2. The AOJ should again ask the Veteran to identify the providers of all evaluations and/or treatment she has received for each disability remaining on appeal (left elbow disability, lumbar spine disability, laminectomy, left knee disability, right knee disability, and general neurological disorder), and to provide the authorizations necessary for VA to obtain all outstanding records of any such private evaluations or treatment she has received (to specifically include from "Dr. Williams" at "Coordinated Health" (identified in April and May 2015 VA medical records). The AOJ should secure for the record copies of the complete clinical records of all evaluations and treatment from the providers identified. If a private provider does not respond to a VA request for identified records sought, the Veteran must be so notified, and reminded that ultimately it is her responsibility to ensure private records are received.

The AOJ should specifically secure the updated records of all VA treatment the Veteran has received, from June 2015 to the present, for the disabilities remaining on appeal. In particular, the AOJ should make available for review in the Veteran's record all pertinent contents of the June 2015 "SCANNED OUTSIDE MEDICAL RECORDS" featuring a "COORDINATED HEALTH NOTE" cited in her VA medical records.

The AOJ should also review the Veteran's expressed concerns suggesting that her evidentiary record is incomplete; see April 2015 letter, in the section entitled "Appeals Management Center neglecting their duties to assist veteran," and take any appropriate action to ensure that the evidentiary record is up to date and complete.

3. After the record is determined to be complete, the AOJ should arrange for the Veteran to be examined by an orthopedist to determine the nature and likely etiology of her claimed left elbow, back, neck (laminectomy), and left knee disabilities. The Veteran's VA record must be reviewed by the examiner in conjunction with the examination. Based on examination of the Veteran and review of her record, the examiner should provide opinions that respond to the following:

a) Identify (by diagnosis) each left elbow disability entity found.

b) Please identify the likely etiology for each diagnosed left elbow disability. Specifically, is it at least as likely as not (a 50% or better probability) that such disability is related to the Veteran's service, to include as due to heavy lifting associated with her duties in service.

c) Identify (by diagnosis) each back disability entity found. Please address the indication of "arthropathy" of the spine in October 2008 and December 2014 VA diagnostic imaging report (the latter also included in a June 2015 VA examination report).

d) Please identify the likely etiology for each diagnosed back disability. Specifically, is it at least as likely as not (a 50% or better probability) that such disability is related to the Veteran's service, to include as due to heavy lifting associated with her duties in service.

e) Identify (by diagnosis) each neck disability entity found (including surgical residuals from laminectomy).

f) Please identify the likely etiology for each diagnosed neck disability. Specifically, is it at least as likely as not (a 50% or better probability) that such disability is related to the Veteran's service, to include as due to heavy lifting associated with her duties in service.

g) Identify (by diagnosis) each left knee disability entity found (including surgical residuals).

h) For each left knee diagnosis, does factual evidence of record clearly and unmistakably show that such disability pre-existed the Veteran's active duty service? If so, please identify such evidence.

i) For each left knee diagnosis found to have clearly and unmistakably pre-existed service, please indicate whether there is clear and unmistakable evidence that the disability was not aggravated beyond the natural course during service. If so, please identify the evidence. (Please discuss the STRs showing left knee symptoms in answering this question.)

j) For each left knee diagnosis not found to have clearly and unmistakably pre-existed service, please identify the likely etiology for the disability. Specifically, is it at least as likely as not (a 50% or better probability) that any such disability is related to the Veteran's service, to include as due to heavy lifting associated with her duties in service. (Please discuss the STRs showing left knee symptoms in answering this question.)

The examiner must explain the rationale for all opinions. If the Veteran fails to report for the examination, the specialist should (to the extent possible) provide the requested opinions based on the information of record.

4. After completion of the above and any additional needed development (including any new medical opinion which may become needed for the intertwined issue of secondary service connection for a right knee disability), the AOJ should review the record and readjudicate the claims on appeal. If any remains denied, the AOJ should issue an appropriate SSOC (including readjudication of the claim of service connection for a general neurological disorder, if not withdrawn by the Veteran) and afford the Veteran opportunity to respond. The case should then be returned to the Board, if in order, for further review.

The appellant has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999). 




These claims must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).


_________________________________________________
George R. Senyk
Veterans Law Judge, Board of Veterans' Appeals

Under 38 U.S.C.A. § 7252 (West 2014), only a decision of the Board of Veterans' Appeals is appealable to the United States Court of Appeals for Veterans Claims. This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of your appeal. 38 C.F.R. § 20.1100(b) (2014).