Citation Nr: 1550154 
Decision Date: 11/30/15 Archive Date: 12/04/15

DOCKET NO. 06-32 526 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Louis, Missouri


THE ISSUES

1. Entitlement to an increased disability rating for residuals of shell fragment wounds to Muscle Group XVII of the right hip, currently evaluated as 50 percent disabling.
 
2. Entitlement to an initial compensable disability rating for residuals of a compound, complete comminuted fracture of the neck of the right femur with degenerative changes.
 
3. Entitlement to a total disability rating based on individual unemployability (TDIU).

(The appeal as to the claim of entitlement to reimbursement for medical expenses incurred as a result of treatment received at Baxter Regional Medical Center in Mountain Home, Arkansas from January 8, 2013 to January 22, 2013, is the subject of a separate Board decision.)



REPRESENTATION

Veteran represented by: Missouri Veterans Commission


WITNESSES AT HEARING ON APPEAL

The Veteran and his wife


ATTORNEY FOR THE BOARD

S. Delhauer, Associate Counsel


INTRODUCTION

The Veteran served on active duty from October 1943 to December 1945.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from an April 2006 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in North Little Rock, Arkansas, which denied entitlement to a disability rating in excess of 50 percent for residuals of shell fragment wounds to Muscle Group XVII of the right hip, and denied entitlement to a compensable initial disability rating for residuals of a compound, complete comminuted fracture of the neck of the right femur with degenerative changes. In a May 2009 rating decision, the North Little Rock RO denied entitlement to a total disability rating based on individual unemployability (TDIU). As the Veteran now resides in Missouri, the Agency of Original Jurisdiction (AOJ) is now the St. Louis, Missouri RO. See, e.g., December 2014 rating decision.

In July 2009, the Board remanded the claims for increased disability ratings to afford the Veteran a hearing before the Board. In October 2009, the Veteran and his wife testified at a videoconference hearing before the undersigned Veterans Law Judge. A transcript of the hearing is associated with the evidentiary record. 

In December 2009, the Board remanded the claims for increased disability ratings for additional development.

In a July 2010 decision, the Board denied entitlement to a disability rating in excess of 50 percent for residuals of shell fragment wounds to Muscle Group XVII of the right hip, and denied entitlement to a compensable disability rating for residuals of a compound, complete comminuted fracture of the neck of the right femur with degenerative changes. The Veteran appealed the Board's denials to the United States Court of Appeals for Veterans Claims (Court). In June 2011, the parties filed a Joint Motion for Partial Remand (JMR), and the Court granted the JMR. Accordingly, the Board's July 2010 decision with respect to the denials of increased disability ratings was vacated and remanded for action consistent with the terms of the JMR. 

Regarding the Veteran's claim of entitlement to TDIU, in July 2011 the Veteran submitted a written statement in which he withdrew his prior request for a hearing before the Board.

In January 2012, the Board remanded all three matters for further development.

The Veteran's file has been scanned, and converted from a hybrid paper and electronic file to a purely electronic file located on the Veterans Benefits Management System. Documents contained on the Virtual VA paperless claims processing system have also been reviewed.

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2015). 38 U.S.C.A. § 7107(a)(2) (West 2014).

The appeal is REMANDED to the AOJ. VA will notify the Veteran if further action is required.


REMAND

In the January 2012 remand, the Board instructed the AOJ to provide the Veteran with a new VA examination to determine the nature and severity of the Veteran's residuals of shell fragment wounds to Muscle Group XVII of the right hip, and residuals of a compound, complete comminuted fracture of the neck of the right femur with degenerative changes, consistent with the terms of the June 2011 Court-adopted JMR. The Board also instructed the AOJ to provide the Veteran with a VA examination to address the claim for TDIU.

It appears some initial steps were taken by the North Little Rock RO to comply with the January 2012 remand directives, however it appears that at one point the Veteran's claims were mistakenly marked as withdrawn. See January 2013 cancellation of requested VA examinations (Veteran withdrew claim). However, the evidentiary record indicates the Veteran's wife had stated the Veteran could not attend the scheduled VA examinations because he was in the hospital. See January 2013 CAPRI appointment list note. Further, the Veteran has indicated on multiple occasions that he continues to seek these increased disability ratings. See, e.g., January 2014 claim; February 2013 claim.

Subsequently, it appears some attempts to provide the Veteran with the ordered VA examinations have been made by both the North Little Rock RO and the St. Louis RO. See February 2015 Request for Physical Examination; February 2014 email correspondence ; February 2014 Request for Physical Examination. However, it is unclear from the evidentiary record if the ordered development has been completed to date in this matter, which is advanced on the docket. Accordingly, the Board finds that another remand is necessary to ensure the ordered development is completed in an expeditious manner.

However, since the January 2012 remand, the evidentiary record indicates that the Veteran has suffered from declining health, his wife has expressed concern over the Veteran's ability to travel for VA examinations, and the Veteran now resides in a nursing home. See, e.g., February 2015 Exchange of Beneficiary Information and Request for Administrative and Adjudicative Action; August 2014 wife statement. 

The Board notes the similarities between the facts of this case and the facts of Bolton v. Brown, 8 Vet. App. 185 (1995), a case involving an incarcerated veteran. In Bolton, the Court noted that incarcerated veterans are entitled to the same care and consideration given to other veterans. Vet. App. at 191 (citing Wood v. Derwinski, 1 Vet. App. 190 (1991)). The Court noted that although the RO claimed an inability to get a fee-basis physician to conduct an examination in the correctional facility, the record contained neither information concerning the efforts expended by the RO in that regard nor any explanation as to why a VA psychiatrist was not directed to perform the examination. Bolton, 8 Vet. App. at 191. The same principles apply in this case involving the Veteran who now resides in a nursing home.

As such, the AOJ should determine whether the Veteran is able to travel to VA examinations. If not, the AOJ should determine the feasibility of scheduling the Veteran for VA fee-basis examinations, or even performing the examinations at the nursing home at which the Veteran currently resides.

Finally, the Board notes that in March 2012, the Veteran submitted a completed Authorization and Consent to Release Information to VA, VA Form 21-4142, for VA to obtain treatment records from Cardiovascular Associates of Arkansas. See also February 2012 Veteran statement. It does not appear that those records have been requested or obtained, and therefore on remand, the AOJ should make appropriate efforts to obtain the outstanding private treatment records. 


Accordingly, the case is REMANDED for the following action:

(This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). Expedited handling is requested.)

1. The AOJ should make appropriate efforts to obtain the Veteran's identified private treatment records from Cardiovascular Associates of Arkansas. The Veteran's assistance should be requested as needed. All obtained records should be associated with the evidentiary record.

The AOJ must perform all necessary follow-up indicated. If the records are not available, the AOJ should make a formal finding of unavailability, advise the Veteran and his representative of the status of his records, and give the Veteran the opportunity to obtain the records on his own.

2. The AOJ should obtain any outstanding relevant VA treatment records. All obtained records should be associated with the evidentiary record.

3. Afford the Veteran a VA examination(s), if necessary on a fee basis, for evaluation of the service-connected residuals of shell fragment wounds to Muscle Group XVII of the right hip, and residuals of a compound, complete comminuted fracture of the neck of the right femur with degenerative changes. 

If the Veteran cannot travel for VA examinations, to include examination on a fee-basis, the AOJ should arrange for the examination(s) to be conducted at the nursing home where the Veteran resides on either a fee-basis, or have a VA employee who can travel go to the nursing home where he resides to conduct the examination(s).

The entire evidentiary record, to include a complete copy of this remand and the January 2012 remand, must be made available to the examiner(s). The examination report(s) must include a notation that this record review took place. 

The examiner(s) should describe all pertinent symptomatology, and should provide the following information:

a) The examiner(s) should identify all current neurological symptoms associated with residuals of a compound, complete comminuted fracture of the neck of the right femur with degenerative changes. The examiner(s) should specify the nerves involved, note whether there is associated atrophy, or weakness, and express an opinion as to the severity of the disability for each nerve involved.

b) The examiner(s) should specifically report the ranges of motion of the right hip and the right leg. 

c) The examiner(s) should specifically identify all Muscle Groups affected by the in-service injury at the time of the 1944 injury.

d) The examiner(s) should identify all current residuals of shell fragment wounds to Muscle Group XVII of the right hip, to include any scars, muscle injury or damage, and/or neurological impairment (to include complaints of pain and discomfort noted in the report of the January 2009 VA examination). If any muscle and/or neurological impairment as a residual of shell fragment wounds to Muscle Group XVII of the right hip is identified, the examiner(s) should indicate whether each such impairment constitutes a distinct disability capable of being separately evaluated. 

e) Concerning the Veteran's scarring, the examiner(s) should provide a detailed description of the scars of each wound, to include, but not limited to, the following: the size of the scars and scar areas in square inches or square centimeters; whether any scar is superficial (not associated with underlying soft tissue damage); whether any scar is deep (associated with underlying soft tissue damage); whether any scar is unstable (with frequent loss of covering of skin over the scar); whether any scar is well-healed, painful, tender, adherent, and/or ulcerated; and whether scar residuals cause limited motion or other limitation of function of an affected body part. If so, the examiner(s) should describe in detail the limitation(s), and extent and severity thereof. If the scars do not cause limited motion or other limitation of function of an affected body part, the examiner(s) should specifically so state in the examination report. 

f) In providing the specific findings noted above, the examiner(s) should, to the extent possible, distinguish the symptoms and effects of the service-connected residuals of shell fragment wounds to Muscle Group XVII of the right hip, and residuals of a compound, complete comminuted fracture of the neck of the right femur with degenerative changes, from those associated with any other non-service-connected disability. 

g) The examiner(s) should render specific findings as to the impact of the service-connected residuals of shell fragment wounds to Muscle Group XVII of the right hip, and residuals of a compound, complete comminuted fracture of the neck of the right femur with degenerative changes, on the Veteran's ability to work.

4. Afford the Veteran an appropriate VA examination(s), if necessary on a fee basis, to obtain an opinion as to the impact of his service-connected disabilities on the Veteran's ability to work. 

If the Veteran cannot travel for VA examination(s), to include examination on a fee-basis, the AOJ should arrange for the examination(s) to be conducted at the nursing home where the Veteran resides on either a fee-basis, or have a VA employee who can travel go to the nursing home where he resides to conduct the examination(s).

The evidentiary record, to include a complete copy of this remand and the January 2012 remand, must be provided to the examiner(s) designated to examine the Veteran. The examination report(s) must include a notation that this record review took place. 

The examiner(s) should to determine the degree and extent of functional impairment associated with his service-connected disabilities, to include the effects of those disabilities on occupational duties and activities of daily living. The complete rationale for all opinions should be set forth.

The examiner should note that as of the date of this remand, the Veteran suffers from the following service-connected disabilities: residuals of shell fragment wounds to Muscle Group XVII of the right hip; residuals of a compound, complete comminuted fracture of the neck of the right femur with degenerative changes; and residuals of a perforated gastric ulcer with chronic diarrhea.

5. The AOJ should conduct any other development deemed appropriate.

6. After the above development has been completed, readjudicate the claims. If any benefit sought remains denied, provide the Veteran and his representative with a supplemental statement of the case, and return the case to the Board.

The Veteran has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate 

action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



_________________________________________________
MICHAEL LANE
Veterans Law Judge, Board of Veterans' Appeals

Under 38 U.S.C.A. § 7252 (West 2014), only a decision of the Board of Veterans' Appeals is appealable to the United States Court of Appeals for Veterans Claims. This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of your appeal. 38 C.F.R. § 20.1100(b) (2015).