Citation Nr: 1725231 
Decision Date: 06/30/17 Archive Date: 07/10/17

DOCKET NO. 08-30 962 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Roanoke, Virginia


THE ISSUES

1. Entitlement to service connection for bilateral hearing loss. 

2. Entitlement to an initial compensable rating for major depressive disorder. 


REPRESENTATION

Appellant represented by: Vietnam Veterans of America


ATTORNEY FOR THE BOARD

L. Crohe, Counsel




INTRODUCTION

The Veteran had active service from August 1972 to September 1975. He is currently incarcerated. 

These matters come before the Board of Veterans' Appeals (Board) on appeal from an April 2008 rating decision issued by the Department of Veterans Affairs (VA) Regional Office (RO) in Huntington, West Virginia, which inter alia, denied service connection for hearing loss and depression. The file was subsequently transferred to the RO in Roanoke, Virginia. In a February 2013 rating decision, the RO in Roanoke, Virginia granted service connection for major depressive disorder and assigned a noncompensable rating, effective August 23, 2007. 

In January 2011 and June 2014, the Board remanded the claims for further development. 

The appeal is REMANDED to the Agency of Original Jurisdiction (AOJ). VA will notify the appellant if further action is required.


REMAND

Unfortunately, the Veteran's appeal must be remanded for further development. Although the Board sincerely regrets the additional delay, it is necessary to ensure that there is a complete record upon which to decide the Veteran's appeal so that he is afforded every possible consideration.

Regarding the Veteran's bilateral hearing loss, initially, the Board remanded the Veteran's claim in January 2011 in order to afford the Veteran with a VA examination. The RO was to contact the correctional facility where the Veteran was incarcerated so that every possible means of conducting the examination was explored. A VA examination was scheduled for May 2012; however, the review of the record reflects that the facility where the Veteran was incarcerated did not have audiological equipment and would not transport the Veteran for non-emergent care. In June 2014, the Board remanded the claim again noting that VA has special procedures for handling the scheduling of VA examinations for incarcerated Veterans and there was no further information of record regarding the steps that were taken to attempt to provide the necessary examination. 

Subsequently, in October 2016, the Director of Reentry and Programs notified VA that the Department of Corrections (DOC) was unable to transport the Veteran to medical screenings associated with compensation and pension claims (even for auditory assessments) due to limited resources. Additionally, in an October 2016 supplemental statement of the case (SSOC), a Decision Review Officer (DRO) referred to a prior note in the July 2013 SSOC indicating that the facility where the Veteran was incarcerated did not have audio equipment. However, the Veteran has since been transferred to a different facility and it does not appear that any attempt has been made to afford the Veteran an audiological evaluation at his current facility either by its own medical personnel or by sending a VA or fee-basis examiner to the correctional facility to conduct the examination. Therefore, there is no indication or documentation that the RO complied with the provisions of M21-1, Part III.iv.3.F.2.d that indicate that VSRs must document all efforts to schedule the examination, including identifying and requesting the assistance of appropriate prison officials and providing documentation that they made substantial attempts to schedule and conduct the examination and exhausted all possible avenues for obtaining access to the incarcerated Veteran for the examination. Based on the inaction taken at the RO level regarding VCAA procedures for incarcerated veterans, the Board does not find substantial compliance with its previous remand instructions. See Stegall v. West, 11 Vet. App. 268, 271 (1998) (noting the Board's duty to "insure [the RO's] compliance" with the terms of its remand orders).

VA has special procedures for handling the scheduling of VA examinations for incarcerated Veterans. The duty to assist incarcerated Veterans requires VA to tailor its assistance to meet the peculiar circumstances of confinement; as such, individuals are entitled to the same care and consideration given to their fellow non-incarcerated Veterans. Wood v. Derwinski, 1 Vet. App. 190, 193 (1991).
VA does not have the authority to require a correctional institution to release a Veteran so that VA can provide him or her with the necessary examination at the closest VA medical facility. See 38 U.S.C.A. § 5711 (West 2014). Nevertheless, VA's duty to assist an incarcerated veteran includes: (1) attempting to arrange transportation of the claimant to a VA facility for examination; (2) contacting the correctional facility and having their medical personnel conduct an examination according to VA examination work sheets; or (3) sending a VA or fee-basis examiner to the correctional facility to conduct the examination. Bolton v. Brown, 8 Vet. App. 185, 191 (1995). 

The VA Adjudication Procedure Manual contains a provision for scheduling examinations of incarcerated Veterans. The manual calls for the RO or the local Veterans Health Administration (VHA) Medical Examination Coordinator to confer with prison authorities to determine whether a Veteran should be escorted to a VA medical facility for examination by VHA personnel. If that is not possible, the Veteran may be examined at the prison by: (1) VHA personnel; (2) prison medical providers at VA expense; or (3) fee-basis providers contracted by VHA. See M21-1, Part III.iv.3.F.2.d

VBA Fast Letter 11-22 (Sept. 8, 2011) outlines how the compensation clinics must document that they have made multiple attempts and exhausted all possible avenues for obtaining access to the incarcerated Veteran for the examination.

As such, the Veteran should be afforded another chance at a VA examination while he is incarcerated regarding his hearing loss. Furthermore, if a VA examination cannot be arranged after the RO's reasonable attempts, the RO should arrange for a VA medical opinion from an appropriate examiner. The medical examiner must render his or her opinions based on the Veteran's available medical treatment records. 

Additionally, the electronic record includes an audiogram from Avada Audiology & Hearing Care dated in November 2007, which contain only charted test results. In addition, it is not clear from this report whether the Maryland CNC word list was used, as required for VA purposes. See 38 C.F.R. §§ 3.385, 4.85 (2016). Therefore, on remand, the examiner or reviewing clinician is asked to interpret and clarify the findings of the November 2007 private audiogram. 

The Veteran was last scheduled for a VA mental disorder disability benefits questionnaire, via telemedicine, in May 2012. On his July 2013 Form 9, substantive appeal, the Veteran reported that he told the examiner that he sometimes has suicidal thoughts; however, such symptoms were not reported on the examination report. He asserted that he had difficulty with hearing the examiner over the telecom system and that halfway through the call it cut off necessitating a second phone call/meeting. See August 2013 correspondence. He also asserts that he exhibits occupational and social impairment, unprovoked irritability, and an inability to establish and maintain effective relationships. See July 2013 Form 9. These symptoms were not reported on the May 2012 VA examination. As the Veteran has suggested that the medical history on the examination was incomplete as it did not address his suicidal ideations and suggested worsened symptomatology, a new VA examination is necessary to determine the current severity of his service-connected major depressive disorder, in accordance with the special procedures for handling the scheduling of VA examinations for incarcerated Veterans. See 38 U.S.C.A. § 5711 (West 2014); Snuffer v. Gober, 10 Vet. App. 400 (1997); Caffrey v. Brown, 6 Vet. App. 377 (1994); VAOPGCPREC 11-95 (1995); Wood v. Derwinski, 1 Vet. App. 190, 193 (1991); Bolton v. Brown, 8 Vet. App. 185, 191 (1995); M21-1, Part III.iv.3.F.2.d; VBA Fast Letter 11-22 (Sept. 8, 2011). 

Accordingly, the case is REMANDED for the following action:

1. Schedule the Veteran for a VA audiological examination in accordance with the procedures outlined above and found in 38 U.S.C.A. § 5711 (West 2014); Wood v. Derwinski, 1 Vet. App. 190, 193 (1991); Bolton v. Brown, 8 Vet. App. 185, 191 (1995); M21-1, Part III.iv.3.F.2.d.; VBA Fast Letter 11-22 (Sept. 8, 2011). 

(If the RO is unable to afford the Veteran an examination due to his incarceration, document in detail all of the steps taken in attempting to do so and arrange for a medical opinion by an appropriate VA examiner.)

The Veteran's claims file, and a copy of this REMAND should be forwarded to the examiner for review, and the report should reflect that such review occurred. If possible, all indicated studies should be performed, and all findings should be reported in detail. After review of the claims folder, and upon examination of the Veteran (if provided), the VA examiner or reviewing clinician should indicate whether the Veteran has a bilateral hearing loss disability for VA purposes, as specified under the provisions of 38 C.F.R. § 3.385.

If the Veteran does have a current hearing loss disability, the examiner or reviewing clinician is requested to provide an opinion regarding whether it is at least as likely as not (50 percent or more probability) that any hearing loss had its onset in service or is otherwise related to a disease or injury in service; or, was manifested to a compensable degree within a year of service discharge. 

In responding to the requested question, the examiner or reviewing clinician must reference the following evidence: (i) the March 1975 service treatment record showing the Veteran's complaints of an inability to hear out of the left ear after going to the firing range; (ii) the Veteran's reports of in-service acoustic trauma from helicopters; and (iii) the Veteran's claim of in-service onset and continuity of his hearing loss since service. 

The examiner or clinical reviewer should also be asked to interpret the audiogram results as documented on the November 2007 audiogram. In addition, he or she should clarify, if possible, whether or not speech recognition scores were obtained using the Maryland CNC Test.

The examiner should take into account the Veteran's reports of his history, the reported in-service traumatic noise injuries, exposures, or events, and his current symptoms. If the examiner discounts the Veteran's reports, he or she should provide a reason for doing so.

A fully articulated medical rationale for the opinion expressed must be set forth in the medical report. The examiner or reviewing clinician should cite to the medical and lay evidence of record, and discuss the particulars of this Veteran's medical history and the relevant medical sciences that apply to this case, including the use of any medical literature, which may reasonably explain the medical guidance in the study of this case.

2. Schedule the Veteran for a VA examination in accordance with the procedures outlined above and found in 38 U.S.C.A. § 5711 (West 2014); Wood v. Derwinski, 1 Vet. App. 190, 193 (1991); Bolton v. Brown, 8 Vet. App. 185, 191 (1995); M21-1, Part III.iv.3.F.2.d.; VBA Fast Letter 11-22 (Sept. 8, 2011). 

(If the RO is unable to afford the Veteran an examination due to his incarceration, document in detail all of the steps taken in attempting to do so and arrange for a telemedicine evaluation by an appropriate VA examiner.)

Schedule the Veteran for a VA psychiatric examination to determine the current nature and severity of his service-connected major depressive disorder. The claims file should be made available to the examiner in conjunction with the examination, and the examiner should indicate that the claims file was reviewed. If possible, all tests deemed necessary by the examiner should be performed, and all findings set forth in detail. 

Importantly, the examiner should also provide responses to each of the following:

a) Conduct a longitudinal review of the record and (to the degree possible) reconcile the discrepancies in the degree of psychiatric impairment found by the VA examiner in May 2012 and the Veteran's report that he sometimes had suicidal thoughts at the time of the May 2012 VA examination as well as his reports that he currently exhibits occupational and social impairment, unprovoked irritability, and an inability to establish and maintain effective relationships; and

b) Provide your own opinion regarding the severity of the Veteran's psychiatric disability since August 2007; particularly, its impact on the Veteran's occupational and social functioning, and his activities of daily living.

All opinions expressed should be accompanied by supporting rationale.

3. The RO/AMC should review the examination reports to ensure that it contains the information, opinions, and rationales requested in this remand.
4. After completing the above actions, to include any other development, the Veteran's claims should be readjudicated based on the entirety of the evidence. If the claims remain denied, the Veteran and his representative should be issued a Supplemental Statement of the Case.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



_________________________________________________
L. M. BARNARD
Veterans Law Judge, Board of Veterans' Appeals

Under 38 U.S.C.A. § 7252 (West 2014), only a decision of the Board of Veterans' Appeals is appealable to the United States Court of Appeals for Veterans Claims. This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of your appeal. 38 C.F.R. § 20.1100(b) (2016).