Citation Nr: 1829805 
Decision Date: 08/16/18 Archive Date: 08/30/18

DOCKET NO. 97-17 505A ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Winston-Salem, North Carolina


THE ISSUES

1. Whether new and material evidence has been received to reopen a claim of entitlement to service connection for residuals of a head injury manifested by headaches. 

2. Whether new and material evidence has been received to reopen a claim of entitlement to service connection for facial and mouth scars.

3. Entitlement to service connection for residuals of an upper lip and jaw injury.

4. Entitlement to service connection for an acquired psychiatric disorder, to include posttraumatic stress disorder (PTSD).

5. Entitlement to a rating in excess of 10 percent for a chronic right ankle sprain (ankle disability).

6. Entitlement to an extraschedular rating for chronic lumbosacral strain.

7. Entitlement to a total rating based on individual unemployability (TDIU).
WITNESS AT HEARING ON APPEAL

Veteran


ATTORNEY FOR THE BOARD

William Skowronski, Associate Counsel


INTRODUCTION

The Veteran had active military service from March 1981 to May 1990. He had additional service in the Army National Guard.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from February 1997, August 2005, December 2007, and November 2009 rating decisions issued by the Department of Veterans Affairs (VA) Regional Office (RO) in Winston-Salem, North Carolina. The February 1997 rating decision denied a rating in excess of 10 percent for a chronic lumbosacral strain (low back disability). The August 2005 rating decision found new and material evidence had not been received to reopen a claim of service connection for PTSD. The December 2007 rating decision denied service connection for a bilateral shoulder condition and found new and material evidence had not been received to reopen claims of service connection for residuals of a head injury and service connection for facial scars of the nose and mouth. The November 2009 rating decision denied service connection for an upper lip and jaw condition and denied a rating in excess of 10 percent for the right ankle disability. 

The Veteran testified at a hearing before the undersigned Veterans Law Judge in February 2004, at which time the only issue in appellate status was the matter of the increased rating for the low back disability. The Board remanded that claim to the Agency of Original Jurisdiction (AOJ) for additional evidentiary development in June 2004.
A June 2010 Board decision determined that: (1) new and material evidence had been submitted to reopen the claim of service connection for PTSD; (2) new and material evidence had not been submitted to reopen service connection for residuals of a head injury, and the claim remained denied; (3) service connection was not warranted for a shoulder disability; and that (4) the criteria for an increased, 20 evaluation for a disability of the lumbar spine had been met. The issues of entitlement to service connection for PTSD, entitlement to a TDIU, and entitlement to an extraschedular rating for the service-connected low back disability were remanded for further development. The issue of whether new and material evidence has been received to reopen entitlement to service connection for facial scars of the nose and mouth was remanded for issuance of a statement of the case. 

In Clemons v. Shinseki, 23 Vet. App. 1, 5 (2009), the United States Court of Appeals for Veterans Claims (CAVC) held that, in determining the scope of a claim, the Board must consider the claimant's description of the claim; symptoms described; and the information submitted or developed in support of the claim. In light of the CAVC's decision in Clemons, the Board has recharacterized the issue on appeal as entitlement to service connection for an acquired psychiatric disorder, to include PTSD.

The Veteran appealed a portion of the June 2010 Board decision to the CAVC. In November 2010, a Joint Motion for Partial Remand (JMPR) was issued moving the CAVC to vacate the portion of Board decision that determined new and material evidence had not been presented to reopen the claim of service connection for residuals of a head injury, to include headaches. The parties agreed that a remand was warranted because VA had not provided adequate notice of what evidence was necessary to reopen the claim. An Order granting the JMPR was issued in November 2010. 

The Board most recently remanded the claims to the AOJ for additional development in April 2013, and the claims have now been returned to the Board for further appellate review. 

Pursuant to recent requests from the Veteran, a Board hearing was scheduled for January 2012. The hearing was postponed at his request. He failed to appear for a second Board hearing scheduled in November 2012, and there have been no further hearing requests made.

The Board observes that the Veteran was previously represented by an agent but in April 2015, prior to when the case was recertified to the Board, the Veteran's agent withdrew as representative. Thus, the Board will treat the Veteran as a pro se appellant.


FINDINGS OF FACT

1. The RO denied the Veteran's claim of entitlement to service connection for residuals of head injury in a March 2005 rating decision that the Veteran did not appeal. Although the Board declined to reopen the Veteran's claim in a June 2010 decision, that decision was subsequently vacated due to a JMPR. 

2. The evidence submitted since the March 2005 rating decision does not raise a reasonable possibility of substantiating the Veteran's claim of entitlement to service connection for residuals of a head injury. 

3. The RO denied the Veteran's claim of entitlement to service connection for facial and mouth scars in a February 1998 rating decision that the Veteran did not appeal. 

4. The evidence submitted since the February 1998 rating decision does not raise a reasonable possibility of substantiating the Veteran's claim of entitlement to service connection for facial and mouth scars. 

5. There is no evidence showing that the Veteran had good cause for the failure to report for VA examination scheduled for the purpose of determining whether he has PTSD or another psychiatric disorder which is related to service; there is no competent evidence showing that he has any acquired psychiatric disorder related to his service.

6. There is no evidence showing that the Veteran had good cause for the failure to report for VA examination scheduled for the purpose of determining the current nature and severity of his service-connected right ankle disability.

7. The functional impairments related to the Veteran's service-connected low back disability are contemplated by the schedular criteria for rating disabilities of the spine.

8. The Veteran's service-connected disabilities do not preclude him from obtaining or maintaining substantially gainful employment.


CONCLUSIONS OF LAW

1. The March 2005 rating decision which denied service connection for residuals of a head injury is final; new and material evidence has not been submitted, and the Veteran's claim is not reopened. 38 U.S.C.A. §§ 5108, 7105 (2012); 38 C.F.R. §§ 3.104(a), 3.156, 3.160(d), 20.302 (2017).

2. The February 1998 rating decision which denied service connection for facial scars is final; new and material evidence has not been submitted, and the Veteran's claim is not reopened. 38 U.S.C.A. §§ 5108, 7105 (2012); 38 C.F.R. §§ 3.104(a), 3.156, 3.160(d), 20.302 (2017).

3. The criteria for service connection for a psychiatric disorder have not been met. 38 U.S.C. §§ 1131, 5107 (2012); 38 C.F.R. §§ 3.303, 3.304, 3.307, 3.309, 3.655(b) (2017).

4. The criteria for a rating in excess of 10 percent for the right ankle disability have not been met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 3.321, (2017).

5. The criteria for an extraschedular rating for a chronic lumbosacral strain have not been met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 3.102, 3.321(b), 4.3 (2017).

6. The criteria for a TDIU have not been met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 3.340, 3.341, 4.3, 4.15, 4.16, 4.18 (2017).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Duties to Notify and Assist 

The Veterans Claims Assistance Act of 2000 (VCAA) imposes on VA a duty to provide notice of how to substantiate a claim and to assist in evidentiary development. See 38 U.S.C. §§ 5102, 5103, 5103A (2012); 38 C.F.R. § 3.159 (2017); see also Scott v. McDonald, 789 F.3d 1375 (Fed. Cir. 2015).

VA's duty to notify in the matters of entitlement to service connection for the issues decided were satisfied by letters dated in June 2004, May 2005, March 2006, May 2008, January 2009, April 2011, November 2013, and June 2015.

VA also has met its duty to assist the Veteran in these appeals. Specifically, the Veteran's service treatment records (STRs) and post-service treatment records have been obtained and considered. He has not properly identified any additional, outstanding records that have not been requested or obtained in relation to these issues.

The Veteran was afforded VA examinations for his service-connected right ankle disability in February 2009 and for his service-connected low back disability in March 2003, November 2004, February 2006, and April 2006. In the April 2013 remand, the Board directed the AOJ to schedule the Veteran for VA examinations in conjunction with the claims of service connection for a psychiatric disorder and entitlement to an increased rating for the right ankle disability. The Veteran failed to report to the examinations that were scheduled between March 2016 and May 2016. He has not provided any good cause for why he did not report for the examinations. Notably, the Compensation and Pension Exam Inquiry Sheet notes he did not appear for the examinations and lists his address as the address that, at that time, was the correct last known address. The Board observes in this regard that veterans must generally keep VA apprised of their whereabouts. If they do not do so, then there is no burden on the part of VA to "turn up heaven and earth to find [them]." See Hyson v. Brown, 5 Vet. App. 262, 265 (1993); see also Thompson v. Brown, 8 Vet. App. 169, 175 (1995) (finding VA may rely on the "last known address" shown of record and burden is on appellant to keep VA apprised of his or her whereabouts). In this regard, the duty to assist is not a one-way street. Wood v. Derwinski, 1 Vet. App. 190, 193 (1991) (If a veteran wishes help, he cannot passively wait for it in those circumstances where he may or should have information that is essential in obtaining the putative evidence). To date, the Veteran has not reported he did not receive notice of these examinations or request that they be rescheduled. Accordingly, the Board finds that no further assistance is necessary. 

The Veteran has not raised any other issues regarding VA's duties to notify and assist. See Scott v McDonald, 789 F.3d 1375, 1381 (Fed. Cir. 2015) (holding that "the Board's obligation to read filings in a liberal manner does not require the Board . . . to search the record and address procedural arguments when the veteran fails to raise them before the Board."); Dickens v. McDonald, 814 F.3d 1359, 1361 (Fed. Cir. 2016) (applying Scott to duty to assist argument).


II. Legal Criteria, Factual Background, and Analysis

Although the Board has an obligation to provide reasons and bases supporting its decision, there is no need to discuss every piece of evidence. Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000). Hence, the Board will summarize the relevant evidence as deemed appropriate, and the Board's analysis will focus specifically on what the evidence shows, or fails to show, as to each claim.


New and Material Evidence

The Veteran's claims of entitlement to service connection for residuals of a head injury and for facial and mouth scars were denied by March 2005 and February 1998 rating decisions respectively. Both rating decisions are now final, as the Veteran failed to perfect an appeal with regard to either decision. 38 U.S.C.A. § 7105; 38 C.F.R. §§ 3.104(a), 3.160(d), 20.302. The Board does observe that it issued a prior, June 2010, decision declining to reopen the claim of entitlement to service connection for head injury residuals. However, as that portion of the Board 2010 decision was subsequently vacated by a JMPR, the March 2005 rating action remains the last final VA decision on that matter. 

A previously denied claim may be reopened by the submission of new and material evidence. 38 U.S.C.A. § 5108; 38 C.F.R. § 3.156. New evidence is defined as evidence not previously submitted to agency decisionmakers. Material evidence means existing evidence that, by itself or when considered with previous evidence of record, relates to an unestablished fact necessary to substantiate the claim. New and material evidence can be neither cumulative nor redundant of the evidence of record at the time of the last prior final denial of the claim sought to be reopened, and must raise a reasonable possibility of substantiating the claim. 38 C.F.R. § 3.156(a).

Service Connection for Residuals of Head Injury

The Veteran was initially denied service connection for residuals of a head injury by a March 2005 rating decision which concluded that no evidence of any residuals from an in-service automobile accident existed. The Veteran did not appeal, and his claim became final. At the time of the March 2005 rating decision, the evidence of record included: service treatment records showing that the Veteran was involved in an automobile accident in service from which he received facial lacerations; service treatment records also show that the Veteran reported having received a head injury on his medical history survey that he completed in conjunction with his separation physical in May 1990; a separation physical showing the Veteran's head was found to be normal and no neurologic abnormalities were noted; VA treatment records showing treatment for headaches; and the Veteran's statements attributing his headaches to his motor vehicle accident in service.
 
Since the March 2005 rating decision, the Veteran has continued to contend that he incurred a severe head injury in service and that he continues to have residuals from that injury. The Veteran's statements are material in that they address an injury in service and a current disability; however, because they are duplicative of what was of record at the time his claim was previously denied the Veteran's statements are not new. Because the evidence to reopen a claim must be both new and material, the Veteran's duplicative statements do not meet the criteria for reopening a claim.

Service Connection for Facial and Mouth Scars

The Veteran was initially denied service connection for facial scars by a February 1998 rating decision which concluded that there was no evidence of any scars as the result of an in-service automobile accident existed. The Veteran did not appeal, and his claim became final. At the time of the February 1998 rating decision, the evidence of record included: service treatment records showing that the Veteran was involved in an automobile accident in service from which he received facial lacerations; a separation physical in May 1990 showing history of facial lacerations, but not observing any current scars; and the Veteran's statements attributing facial cuts to his motor vehicle accident in service.
 
Since the February 1998 rating decision, the Veteran has continued to contend that he incurred facial, to include mouth, scars as a result of his service. The Veteran's statements are material in that they address an injury in service and a current disability; however, because they are duplicative of what was of record at the time his claim was previously denied, the Veteran's statements are not new. Because the evidence to reopen a claim must be both new and material, the Veteran's duplicative statements do not meet the criteria for reopening a claim.




Service Connection 

Psychiatric Disorder

Under 38 C.F.R. § 3.655(a), when entitlement to a benefit cannot be established without a current VA examination or reexamination, and a claimant, without good cause, fails to report for such examination or reexamination, action shall be taken in accordance with 38 C.F.R. § 3.655 (b) or (c) as appropriate. Under 38 C.F.R. § 3.655(b), when a claimant fails to report for an examination scheduled in conjunction with an original compensation claim, the claim shall be rated based on the evidence of record, but when a claimant fails to report without good cause for an examination scheduled in conjunction with a reopened claim -such as this-, or a claim for increase, the claim shall be denied. Examples of good cause include, but are not limited to, the illness or hospitalization of the claimant, and death of an immediate family member, etc. 38 C.F.R. § 3.655(a).

The CAVC has held that the burden is upon VA to demonstrate that notice was sent to the claimant's last address of record and that the claimant lacked adequate reason or good cause for failing to report for a scheduled examination. Hyson v. Brown, 5 Vet. App. 262, 265 (1993); see also Connolly v. Derwinski, 1 Vet. App. 566 (1991). The CAVC has held, however, that VA's "duty to assist is not always a one-way street." Wood, 1 Vet. App. at 193. If a claimant wishes help, he cannot passively wait for it in those circumstances where he may or should have information that is essential in obtaining relevant evidence. Id. 

In the absence of clear evidence to the contrary, the law presumes the regularity of the administrative process. Mindenhall v. Brown, 7 Vet. App. 271, 274 (1994) (citing Ashley v. Derwinski, 2 Vet. App. 62, 64-65 (1992)). Notification for VA purposes is a written notice sent to the claimant's last address of record. See 38 C.F.R. § 3.1(q).

In this case, the Board remanded the reopened issue of service connection for PTSD in April 2013 for the Veteran to be afforded an examination to determine whether he has PTSD or any other psychiatric disability and, if so, its etiology. Notably, while the Veteran contended he had PTSD, a September 2010 VA treatment record shows that insomnia was assessed, and an October 2010 telephone record notes a woman called to report that the Veteran was staying with her and non-VA treatment providers diagnosed depression, he never underwent a VA mental disability examination to confirm whether he did in fact have a psychiatric disorder. In the absence of proof of a present disability (and, if so, of a nexus between that disability and service), there can be no valid claim for service connection. Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992). Thus, as the Board noted in the April 2013 remand, a VA psychiatric examination was required to address the critical matters in this case, including whether the Veteran has a current psychiatric disorder. The examination was scheduled in connection with the reopened claim for service connection for PTSD, and 38 C.F.R. § 3.655(b) is for application. The Board notes that the Board recharacterized and expanded the PTSD claim to encompass any psychiatric disorder. While VA treatment providers have assessed alcohol dependence and insomnia, and a woman who was providing housing to the Veteran reported depression had been diagnosed, the Veteran has continued seeking service connection for a psychiatric disorder, which he believes to be PTSD, caused by stressors in military service. See Velez v. Shinseki, 23 Vet. App. 199, 204 (2009). 

The Veteran failed to appear for the VA psychiatric examination scheduled in April 2016. The August 2016 SSOC, which described his failure to report for the examination, was mailed to his last known address of record and was not returned undeliverable. To this date, the Veteran has not reported he did not receive notice of the examination, provided good cause as to why he did not appear for the examination, or requested that the examination be rescheduled.

Given the presumption of regularity of the mailing of the VA examination scheduling notice and the fact that the Veteran has not provided a reason for his failure to report, the Board is satisfied that the Veteran received notice of the examination and failed to report to the scheduled VA examination without good cause. Although the examination was scheduled in order to assist the Veteran with the development of his claim, he did not appear and there is a lack of any competent medical evidence showing that he has any acquired psychiatric disorder due to his service. Moreover, as the Veteran failed, without good cause, to appear at an examination scheduled in conjunction with a reopened claim, the claim is denied. See 38 C.F.R. § 3.655(b). 

Increased Rating

Right Ankle Disability

The matter of entitlement to an increased rating for a chronic right ankle sprain involves similar circumstances. 

Under 38 C.F.R. § 3.655(b), when a claimant fails to report for a scheduled medical examination, without good cause, a claim for an increase shall be denied. 

In this case, the Board remanded the issue of entitlement to an increased rating for the right ankle disability in April 2013 for the Veteran to be afforded a contemporaneous examination to determine the current severity of the ankle disability. The Veteran suggested the disability had increased in severity, and that an examination was necessary to determine whether the criteria for a rating in excess of 10 percent for the right ankle disability had been met. However, as noted, he failed to appear for the scheduled examination. The August 2016 SSOC, which described his failure to report for the examination, was mailed to his last known address of record and was not returned undeliverable. To this date, he has not reported he did not receive notice of the examination, provided good cause as to why he did not appear for the examination, or requested that the examination be rescheduled.

As a result of the Veteran's failure to appear at the new examination, the medical evidence of record continues to reflect that he meets the criteria for a 10 percent disability rating, but no higher. Moreover, given the presumption of regularity of the mailing of the VA examination scheduling notice and the fact that the Veteran has not provided a reason for his failure to report, the Board is satisfied that the Veteran received notice of the examination and failed to report to the scheduled VA examination without good cause. Accordingly, as he failed to appear for an examination scheduled in conjunction with a claim for increase, claim for an increased rating for the right ankle disability must be denied. See 38 C.F.R. § 3.655(b).

Chronic Lumbosacral Strain

The determination of whether a claimant is entitled to an extraschedular rating under § 3.321(b)(1) is a three-step inquiry. Thun v. Peake, 22 Vet. App. 111, 115-116 (2008). If the AOJ or Board determines that (1) the schedular evaluation does not contemplate the claimant's level of disability and symptomatology, and (2) the disability picture exhibits other related factors such as marked interference with employment or frequent periods of hospitalization, then (3) the case must be referred to an authorized official to determine whether, to accord justice, an extra-schedular rating is warranted. Id.; see also 38 C.F.R. § 3.321 (b)(1).

The threshold factor for extraschedular consideration is a finding that the evidence before VA presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate. See Thun 24 Vet App., at 114. In this regard, there must be a comparison between the level of severity and symptomatology of the claimant's service-connected disability with the established criteria found in the rating schedule for that disability. If the criteria reasonably describe the claimant's disability level and symptomatology, then the claimant's disability picture is contemplated by the rating schedule and the assigned schedular evaluation is therefore adequate. Id.; see also VAOGCPREC 6-96 (Aug. 16, 1996). Otherwise, if the schedular evaluation does not contemplate the claimant's level of disability and symptomatology and is found inadequate, VA must determine whether the claimant's exceptional disability picture exhibits other related factors, such as those provided by the extraschedular regulation (38 C.F.R. § 3.321(b)(1)) as "governing norms" (which include marked interference with employment and frequent periods of hospitalization).

During the pendency of the appeal, the criteria for evaluating disabilities of the spine were amended twice. 

Under the regulations in effect prior to September 2002, a 10 percent rating was assigned for mild intervertebral disc syndrome (IVDS); a 20 percent rating was assigned for moderate IVDS with recurring attacks; a 40 percent rating was assigned for severe IVDS manifested by recurring attacks with intermittent relief; and a 60 percent rating was assigned for pronounced IVDS with persistent symptoms compatible with sciatic neuropathy with characteristic pain and demonstrable muscle spasm, absent ankle jerk, or other neurological findings appropriate to site of diseased disc, with little intermittent relief. A rating in excess of 60 percent was not warranted absent a showing of either unfavorable ankylosis or a vertebral fracture with cord involvement. 38 C.F.R. § 4.71a, Code 5293. 
 
Under the rating criteria in effect prior to September 2003, limitation of motion of the lumbosacral spine was rated under Code 5292, with a 10 percent evaluation assigned for slight limitation of motion, a 20 percent evaluation assigned for moderate limitation of motion, and a 40 percent evaluation assigned for severe limitation of motion. 38 C.F.R. § 4.71a, Code 5292. 

The words "slight," "moderate," and "severe" were not defined in the VA Schedule for Rating Disabilities. Rather, all the medical evidence must be evaluated to determine the appropriate rating that would compensate the Veteran for impairment in earning capacity, functional impairment, etc. 

Although the criteria under DC 5292 are less defined and numerical ranges of normal motion were not provided in the prior rating criteria, guidance can be obtained from the amended regulations. The current regulations define normal forward flexion of the thoracolumbar spine as zero to 90 degrees, extension as zero to 30 degrees, left and right lateral flexion as zero to 30 degrees, and left and right lateral rotation as zero to 30 degrees. The combined range of motion refers to the sum of the range of forward flexion, extension, left and right lateral flexion, and left and right rotation. The normal combined range of motion of the thoracolumbar spine is 240 degrees. The normal ranges of motion for each component of spinal motion are the maximum that can be used for calculation of the combined range of motion. See 38 C.F.R. § 4.71a, General Rating Formula for Diseases and Injuries of the Spine, Note (2).

Prior to September 2003, a 10 percent rating could also assigned when a lumbosacral strain resulted in characteristic pain on motion; and a 20 percent rating was assigned when a lumbosacral strain was accompanied by muscle spasm on extreme forward bending, loss of lateral spine motion, unilateral, in standing position. A 40 percent rating was assigned for severe lumbosacral strain with listing of whole spine to opposite side, positive Goldthwaite's sign, marked limitation of forward bending in standing position, loss of lateral motion with osteo-arthritic changes, or narrowing or irregularity of joint space, or some of the above with abnormal mobility on forced motion. 38 C.F.R. § 4.71a, Code 5295.

As of September 2003, disabilities of the spine began to be rated under the General Rating Formula for Diseases and Injuries of the Spine. A 10 percent rating is assigned when forward flexion of the thoracolumbar spine greater than 60 degrees, but not greater than 85 degrees; when forward flexion of the cervical spine greater than 30 degrees, but not greater than 40 degrees; when the combined range of motion of the thoracolumbar spine greater than 120 degrees, but not greater than 235 degrees; when muscle spasm, guarding, or localized tenderness not resulting in abnormal gait or abnormal spinal contour; or when there is vertebral body fracture with loss of 50 percent or more of the height. A 20 percent rating is assigned when forward flexion of the thoracolumbar spine is greater than 30 degrees, but not greater than 60 degrees; when the combined range of motion of the thoracolumbar spine is not greater than 120 degrees; or when there is muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis. A 40 percent rating is assigned when forward flexion of the thoracolumbar spine is 30 degrees or less. See 38 C.F.R. § 4.71a, General Rating Formula for Diseases and Injuries of the Spine. A rating in excess of 40 percent for the orthopedic manifestations is not available unless ankylosis is present, or through combining orthopedic and neurologic impairments from a back disability.

Currently, IVDS is rated under 38 C.F.R. § 4.71a, Code 5243. Under this criteria, a 10 percent rating is assigned for incapacitating episodes having a total duration of at least one week, but less than 2 weeks during the past 12 months; a 20 percent rating is assigned for incapacitating episodes having a total duration of at least 2 weeks but less than 4 weeks during the past 12 months; a 40 percent rating is assigned for incapacitating episodes with a total duration of between 4 and 6 weeks; and a 60 percent rating is assigned for incapacitating episodes with a total duration of at least 6 weeks during the past 12 months. Id.

A May 1995 VA treatment record shows the Veteran complained of back pain. Muscle spasms were noted. He complained of recurrent low back pain again in August 1995. On evaluation, he had full range of motion. A neurological evaluation was normal.

In a May 1996 statement, the Veteran reported he considered his service-connected back disability to be a serious employment handicap. He reported the back disability interfered with his ability to lift heavy objects, bend, and stoop. He reported he slept on the floor due to the back disability. He also asserted he lost jobs due to the back disability.

In a July 1996 application for TDIU, the Veteran asserted his back disability prevented him from securing or following any substantially gainful occupation.

In an April 1997 notice of disagreement, the Veteran reported he had constant back pain and had difficulty walking and standing for long periods of time. He also reported he was unable to hold down a job because of a lack of dexterity. 
In a July 1997 statement, the Veteran stated he attempted to work on several occasions but was unable to because of severe pain.

In a May 1998 statement, the Veteran reported he lived in pain in every day due to his back disability. In a separate statement, he reported his back disability prevented him from being able to hold on to jobs. He was unable to lift heavy objects. 

In a March 2003 statement, the Veteran reported his back disability had increased in severity. He reported it was difficult for him to work while in constant pain. 

The Veteran was afforded a VA back examination in March 2003. He reported back pain bothered him intermittently two to three times a day, but sometimes lasted all day. The back pain made past jobs as a truck driver and construction worker difficult. He complained of pain, weakness, stiffness, fatigability, and lack of endurance. On examination, he ambulated normally. There was slight tenderness on palpation, but no postural abnormality, muscle spasms, or evidence of radiculopathy. On range-of-motion testing, flexion was to 90 degrees, and extension was to 30 degrees. Lateral flexion was to 35 degrees and rotation was to 30 degrees bilaterally. Pain occurred at the maximum ranges of motion. The examiner opined there was likely more evidence of pain during flare-ups, but not any additional limitation of motion. There were no neurological abnormalities.

A May 2003 VA treatment record shows the Veteran complained of severe back pain that radiated to his legs. He continued to complain of back pain in July 2003. 

At the February 2004 Board hearing, the Veteran reported his low back pain radiated throughout his back and into his shoulders and legs. He reported his back locked up at time with a lot of movement or heavy lifting. It bothered him a lot even with normal activity. At times, the pain prevented him from doing anything. He had flare-ups about four times a month that required him to lie down. They normally lasted a couple hours, but sometimes longer. He reported he worked in shipping and receiving, but had lost six months due to the back disability. He wore a back brace. A March 2004 VA treatment record notes the Veteran complained of low back pain that radiated down both legs.

In an April 2004 statement, the Veteran reported he had an episode of back pain that traveled to his legs and prevented him from walking without a cane. The pain lasted 24 hours a day and interrupted his sleep. The back pain prevented him from participating in martial arts. In a June 2004 statement, he reported that during the episode, he was unable to stand or walk on his own. The pain radiated throughout his back, to his legs and shoulders. He was unable to turn or bend at the waist.

The Veteran was afforded a VA back examination in November 2004. He complained of low back pain that occasionally radiated down both legs and caused leg weakness. The pain occurred daily, and the Veteran asserted it had prevented him from working for prior seven months. He stated he had flare-ups of pain that lasted two to three days and occurred once every two weeks to once every month. During flare-ups, he had to lie on the floor for comfort. The examiner noted there were no physician notes for incapacitating episodes in the prior 12 months. The Veteran used a brace and cane at times. He was able to walk a half mile or for 10 minutes. On examination, he was not unsteady. There was not a history of falls. The back disability interfered with daily activities, occasionally making it difficult to dress himself. He reported his back occasionally locked up. On range-of-motion testing, flexion was 0 to 80 degrees with pain beginning at 30 degrees. Extension was 0 to 20 degrees. Left lateral flexion, right lateral flexion, left lateral rotation, and right lateral rotation were each 0 to 20 degrees with pain beginning at that point. The range of motion was less following each request for forward flexion. There was a mild spasm on extreme forward bending. There was tenderness and guarding when moving from a flexion position to an upright position. His gait was normal. The examiner indicated there was not muscle spasm or guarding severe enough to result in abnormal gait, abnormal spinal contour, reversed lordosis or abnormal kyphosis. An X-ray showed minimal disc changes at L4-L5. Weakness was noted on a motor examination of the lower extremities. A sensor examination was normal. 

In an October 2005 statement, the Veteran reported he had daily back problems. The pain also caused sleep difficulties. He reported he wore a back brace and used a cane for balance. The pain prevented him from participating in activities of daily living. He stated a physician would not prescribe bed rest because it would make his entire body stiff. In a separate statement, he reported he had incapacitating episodes more than once a week. 

The Veteran was afforded a VA spine examination in February 2006. He complained of lumbar pain that occasionally radiated to the extremities. Flare-ups were caused by strenuous activities, standing for long periods, walking long distances, stooping, bending, and lifting. He reported he injured his back while unloading trucks in 2004, requiring him to quit work at that time. The examiner noted he had no problems performing the activities of daily living and had not had any incapacitating episodes in the past year. On range-of-motion testing, flexion was to 60 degrees. Extension was to 5 degrees. Lateral flexion was to 10 degrees bilaterally. Rotation was to 20 degrees bilaterally and there was a note of pain with each of the movements. He did not have fatigue, weakness, or lack of endurance. Repetitive motion did not increase the loss of range of motion, and the examiner opined it would be speculation to estimate the range of loss of motion during flare-ups. 

The Veteran underwent another VA spine examination in April 2006. He complained of low back pain that radiated to the tailbone. He also experienced stiffness, but no weakness. He had flare-ups caused by heavy lifting or prolonged standing. Light stretching eased his pain. He was able to walk without assistive devices. He did not use a cane or brace. He had not worked since 2004, when he worked as a teller. He was still trying to find a job. He was able to perform the activities of daily living. He was able to walk for 10 to 15 minutes without difficulty. He avoided heavy lifting. His gait was normal. On range-of-motion testing, flexion was to 80 degrees with pain. Extension was 0 to 15 degrees with pain. Right and left lateral flexion were 0 to 30 degrees without pain. No muscle atrophy or spasms were noted. Repetitive use showed no fatigue, no incoordination, no lack of endurance, and no additional loss of motion by pain. A neurological examination was normal. He had not had any incapacitating episodes in the prior 12 months. 

A June 2006 treatment record notes the Veteran had spinal tenderness and paraspinal muscle spasm after he presented to the emergency room with complaints of exacerbation of his back disability over the prior two weeks. In a separate statement, he reported he had daily back pain and had not been evaluated during an incapacitating episode. 

An October 2006 VA treatment record shows the Veteran complained of exacerbation of his back pain that had lasted two weeks. On evaluation, there was tenderness and a spasm of the paraspinal muscle. He complained of ongoing pain in November 2006. The pain worsened with walking and prolonged sitting. A straight leg raise test was positive on both sides. He continued to complain of low back pain in September 2007. On evaluation, there was no deformity or tenderness of the spine. The paraspinal muscles appeared stiff with hyperesthesia. 

An October 2008 VA treatment record notes the Veteran complained of intermittent low back pain. On evaluation, there was no deformity but mild tenderness of the spine.

The June 2010 Board decision granted an increased, 20 percent rating for the low back disability under Code 5295. The Board also remanded the matter of entitlement to an extraschedular rating for the low back disability so the claim could be referred to the Director of Compensation and Pension Service. 

A November 2010 rating decision assigned the 20 percent rating for the Veteran's low back disability, effective May 8, 1996.

In a July 2010 statement, the Veteran reported he had an incapacitating episode of back pain. A July 2014 VA treatment record notes the Veteran endorsed chronic back pain.

Based on a thorough review of the record, and with due application of the substantive standards for the assignment of an extraschedular rating under 38 C.F.R. § 3.321(b)(1), the Board finds that no higher rating is warranted on an extraschedular basis for the service-connected low back disability. A comparison between the level of severity and symptomatology of the Veteran's low back disability and the schedular ratings assigned shows that the regular schedular rating criteria reasonably contemplate the level of disability and symptomatology.

In sum, the Veteran's low back disability has been manifested by pain that interferes with his movements, flare-ups of pain, a limited range of motion, muscle spasms, a sensation of his back locking up, weakness, and stiffness. Such symptomatology is contemplated by the schedular criteria. Notably, for all musculoskeletal disabilities, the rating schedule contemplates functional loss, which may be manifested by, for example, decreased or abnormal excursion, strength, speed, deformity, coordination, or endurance. 38 C.F.R. § 4.40; see also Mitchell v. Shinseki, 25 Vet. App. 32, 37 (2011). For disabilities of the joints, the rating schedule specifically contemplates factors such as weakened movement; excess fatigability; deformity; instability of station; pain on movement; disturbance of locomotion; and interference with sitting, standing, and weight bearing. 38 C.F.R. §§ 4.45, 4.59; Mitchell, 25 Vet. App. at 37. Based on the foregoing, the Board finds that the Veteran's low back disability is manifested by symptoms that are contemplated by the schedular criteria. Given the variety of ways in which the Rating Schedule contemplates functional loss for musculoskeletal disabilities, the Board finds that the schedular criteria reasonably describe the Veteran's disability picture in this case.

The Board notes that the Veteran's disability has been evaluated under the relevant criteria for evaluating a low back disability, including the criteria in effect prior to September 2002; the criteria in effect between September 2002 and September 2003; and the criteria effective from September 2003. As discussed in the Board's June 2010 decision, a 20 percent rating was assigned under Code 5295 for the presence of muscle spasm on extreme forward bending based the Veteran's reported symptoms and the medical evidence of record. However, the Board considered the totality of the Veteran's symptoms, not just those specifically enumerated in Code 5295, including the Veteran's reported incapacitating episodes, and concluded the criteria for a rating in excess of 20 percent for the low back disability was not warranted. As such, these symptoms were accounted for and included in the Board's determination.

Thus, the Board finds that the first Thun element is not satisfied. Even though the Veteran has reported the service-connected low back disability interferes with his ability to work, the schedular criteria contemplate the level of disability and symptomatology. The Board notes that 38 C.F.R. § 4.1 specifically sets out that "[g]enerally, the degrees of disability specified are considered adequate to compensate for considerable loss of working time from exacerbations or illnesses proportionate to the severity of the several grades of disability." As such, factors such as a loss of working time are clearly contemplated in the rating schedule and provided for in the 20 percent rating assigned. Based on the foregoing, the Board finds that the requirements for an extraschedular rating for the Veteran's service-connected low back disability under the provisions of 38 C.F.R. § 3.321 (b)(1) have not been met. 

Entitlement to a TDIU

A TDIU may be assigned where the schedular rating is less than total, when it is found that the disabled person is unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities. 38 C.F.R. §§ 3.340, 3.341, 4.16.

However, an award of TDIU is not warranted as the record shows that the Veteran has gainful employment. The Board acknowledges the Veteran has reported his service-connected disabilities have prevented him from securing or following any substantial gainful occupation on multiple occasions in the past, but the available evidence shows he has been regularly employed in recent years. A July 2014 VA treatment record notes he reported he had been working actively as a truck driver for the prior three years. A June 2015 report of general information notes he reported he was preparing his truck to go on the road. He reported he was working as a truck driver again in July 2015. Although the record reflects that the Veteran is employed by positions that are not consistently available to him, it does not reflect that his service-connected disabilities prevent him from obtaining and maintaining substantially gainful employment. Given the contrast between the objective medical evidence of record and the Veteran's lay assertions, the credibility of his contentions is significantly diminished. 

In an opinion received in June 2016, the Acting Director of the Compensation Service concluded the evidentiary record did not demonstrate that the symptomatology associated with the Veteran's service-connected disabilities rendered him unemployable. The opinion observes that none of the available evidence supports the contention that the service connected disabilities prevent all types of gainful activity. Considering the totality of the evidence of record, the Board agrees with the opinion of the Compensation Service. The Board has considered the applicability of the benefit-of-the-doubt doctrine. However, as the preponderance of the evidence is against the claim, that doctrine is not applicable. Accordingly, the criteria for a TDIU have not been met.

ORDER

The petition to reopen a claim of entitlement to service connection for residuals of head injury is denied.

The petition to reopen a claim of entitlement to service connection for facial and mouth scars is denied.

Entitlement to service connection for a psychiatric disorder is denied.

Entitlement to a rating in excess of 10 percent for the service-connected right ankle disability is denied.

Entitlement to an increased rating for the Veteran's service-connected low back disability, on an extraschedular basis, is denied.

Entitlement to a TDIU is denied.




______________________________________________
K. OSBORNE
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs