﻿Citation Nr: 18142031
Decision Date: 10/15/18 Archive Date: 10/12/18

DOCKET NO. 14-11 374
DATE: October 15, 2018
REMANDED
Entitlement to an initial disability rating in excess of 20 percent for service-connected residuals of a left clavicle fracture is remanded.
Entitlement to a total disability rating based on individual unemployability (TDIU) is remanded.
REASONS FOR REMAND
1. Entitlement to an initial disability rating in excess of 20 percent for service-connected residuals of a left clavicle fracture is remanded.
Although the Board regrets the additional delay, a remand is required to conduct additional development and readjudication.
In its January 2018 remand, the Board found the June 2016 VA examination inadequate because, in part, the examiner did not ascertain from the Veteran adequate information regarding the frequency, duration, characteristics, severity, or functional loss regarding flare-ups. See Sharp v. Shulkin, 29 Vet. App. 26 (2017). Moreover, the Board found that the examiner failed to offer an opinion with respect to any additional limitation of motion during flare-ups based on estimates derived from information procured from relevant sources, including the Veteran’s lay statements, pursuant to Sharp.
On remand, the Veteran was afforded an April 2018 VA examination. At that examination, he stated he was unable to lift his left shoulder and was unable to lift with his left arm any weight greater than ten pounds. The examiner noted the Veteran was unable to perform any of the required range of motion testing due to pain and that the left shoulder appeared to be frozen and did not move. The Veteran acknowledged experiencing flare-ups with redness over the clavicle area and left shoulder, with pounding pain in the left shoulder going down his arm. The examiner determined that pain would limit functional ability with repeated use over time, but indicated he or she was unable to describe this in terms of range of motion. The examiner explained the inability to formulate this opinion was due to the fact that the Veteran reported that the loss of range of motion was variable after repeated use and flare-ups, depending on how strenuously the joint was used; at worst, he could not move it all due to pain, but there were other times where range of motion loss was minimal. 
The Board finds the April 2018 VA examination report is inadequate. First, it did not comply with the Board’s January 2018 remand directives which required the examiner to discuss the frequency, severity, and duration of flare-ups. Additionally, it did not discuss the Veteran’s contention that his left clavicle/shoulder pain is heightened by exposure to cold weather, repetitive weight-bearing activities, and overhead lifting, as required by the Board’s January 2018 remand instructions.
Moreover, the Board finds it interesting that the Veteran reported at that examination that he was unable to perform any range of motion testing due to pain, particularly because he denied experiencing a flare-up at that examination. Further, it is interesting that he reported the inability to lift any weight greater than ten pounds. This is so because a February 2018 VA treatment record reflects the Veteran sought treatment for left shoulder pain and indicated that he performed “heavy lifting” at work. In a report of general contact with the Veteran in April 2018, to clarify his application for entitlement to TDIU, a VA representative asked the Veteran if he was currently employed, and the Veteran indicated he was still employed, although it does not indicate in what capacity. The Board finds that these observations in the record call into question whether the Veteran would have been able to attempt range of motion testing at the examination. 
While the Board acknowledges that it may be painful to complete range of motion testing, in evaluating the severity of musculoskeletal disabilities affecting the joints, range of motion tests are required. See 38 C.F.R. §§ 4.40, 4.45, 4.59, 4.71a; Correia v. McDonald, 28 Vet. App. 158 (2016). Consideration is also given to the degree of functional loss caused by pain. See DeLuca v. Brown, 8 Vet. App. 202 (1995). Whether an examiner can obtain the necessary test results obviously depends, to some degree, on the Veteran’s cooperation. If the examiner simply cannot obtain the needed results as a consequence of the claimant’s refusal to cooperate, then the duty to assist does not necessarily require VA to make further efforts to obtain the evidence needed to establish the claim. See Wood v. Derwinski, 1 Vet. App. 190, 193 (1991) (“The duty to assist is not always a one-way street. If a veteran wishes help, he cannot passively wait for it in those circumstances where he ay or should have information that is essential in obtaining the putative evidence.”).
It is not totally clear whether, in this case, the Veteran actually refused to cooperate with all range of motion testing; for example, there is no indication that the examiner attempted passive range of motion testing as required by Correia v. McDonald, 28 Vet. App. 158, 170 (2016). The Board emphasizes to the Veteran that range of motion measurements are essential to evaluate the severity of his left shoulder disability and only after the Veteran has been so advised could the Board clearly attribute any inadequate examination results to an unreasonable refusal to cooperate.
Given that the VA April 2018 examination report did not comply with the Board’s prior remand instructions, see Stegall v. West, 11 Vet. App. 268, 271 (1998), and because the Board finds the Veteran should be afforded an additional opportunity to cooperate with the required range of motion testing, a remand is required.
While this case is in remand status, all outstanding VA treatment records must be obtained and associated with the evidence of record before the Board. See Bell v. Derwinski, 2 Vet. App. 611 (1992).
2. Entitlement to a total disability rating based on individual unemployability (TDIU) is remanded.
Given that any potential increase in the Veteran’s residuals of a left clavicle fracture may affect the outcome of the issue of entitlement to TDIU, these issues must be remanded and decided together. See Harris v. Derwinski, 1 Vet. App. 180, 183 (1991).
The matters are REMANDED for the following action:
1. Obtain all outstanding VA treatment records and associate them with the evidence of record before the Board.
2. Following completion of step 1, afford the Veteran the appropriate VA examination to determine the current severity of his residuals of a left clavicle fracture disability. All appropriate tests and studies should be performed. 
In addition to all required information requested on the appropriate Disability Benefits Questionnaire, the examiner is requested to provide the following information:
(a) Describe the frequency, severity, and duration of the Veteran’s flare-ups.
(b) Conduct range of motion testing of the bilateral shoulders (expressed in degrees) in active motion, passive motion, and weight-bearing and non-weight bearing settings. If any of the range of motion testing is unable to be performed, a complete explanation for why this is so must be provided.
(c) Render specific findings as to whether there is objective evidence of pain on motion, weakness, excess fatigability, and/or incoordination.
(d) If pain on motion is observed, the examiner should indicate the point at which pain begins (expressed in degrees). In addition, the examiner should indicate whether, and to what extent, the Veteran experiences likely functional loss due to pain and/or any of the other symptoms noted above during flare-ups or with repeated use. To the extent possible, the examiner should express any such additional functional loss in terms of additional degrees of limitation of motion. 
(e) Consider and discuss the Veteran’s contentions that his left clavicle/shoulder pain is heightened by exposure to cold weather, repetitive weight-bearing activities, and overhead lifting. See July 2016 VA examination report.
If the examination does not take place during a flare-up or after repeated use over time, the examiner should attempt to offer an estimate derived from the information procured from relevant sources, including the Veteran’s lay statements. An examination that fails to attempt to ascertain adequate information from relevant sources regarding frequency, duration, characteristics, severity, or functional loss during flare-ups or repeated use over time will be considered inadequate. See Sharp v. Shulkin, 29 Vet. App. 26 (2017).
A complete rationale for ALL requested opinions is REQUIRED. If the examiner is unable to provide any opinion without resorting to speculation, he or she must indicate why this is so. Specifically, the examiner must indicate whether the need to speculate is caused by a deficiency in the state of general medical knowledge (i.e. no one could respond given medical science and the known facts) or by a deficiency in the record or examiner (i.e. additional facts are required, or the examiner does not have the needed knowledge or training).
3. The Veteran is informed that it is his responsibility to report for any scheduled examinations and to cooperate in the development of the claims and that the consequences for failure to report for any VA examination without good cause may include denial of a claim. See 38 C.F.R. §§ 3.158, 3.655 (2017).
In the event that the Veteran does not report for any scheduled examination, documentation showing that he was properly notified of the examination must be associated with the record.
4. The AOJ must review the examination report and opinions to ensure they are adequate and that they comply with the Board’s specific remand instructions. If deficient in any manner, corrective action must be taken at once.
(CONTINUED ON NEXT PAGE)
5. Then, the Veteran’s claims must be readjudicated. If any benefit sought on appeal is not granted to the Veteran’s satisfaction, the Veteran and his representative must be provided a Supplemental Statement of the Case and be given an adequate opportunity to respond. Thereafter, the case should be returned to the Board for further appellate action.
 
MICHAEL MARTIN
Veterans Law Judge
Board of Veterans’ Appeals
ATTORNEY FOR THE BOARD Jessica O'Connell, Associate Counsel